STANDARD CASTER & WHEEL CO. v. CASTER SOCKET CO., Limited.

(Circuit Court of Appeals, Sixth Circuit. December 17, 1901.)

No. 1,016.

1. PATENTS—INVENTION—ADAPTING DEVICE TO NEW USE.
   The transfer of a device from one art to another does not amount to invention where it performs the same function in both without any change of form to adapt it to the new use.

2. SAME—MAKING SEPARATE PARTS IN SINGLE PIECE.
   The mere making in one piece of a device formerly made in two parts mechanically attached is not invention, and the exception to the general rule must depend upon special facts indicating the presence of the inventive faculty in a degree greater than the mere mechanical knowledge required by so simple an improvement.

3. SAME—FURNITURE CASTERS.
   The Berkey patent, No. 318,533, for a caster socket provided with an interior spring made integral with one side of the socket and from the same material, the purpose of which is to press against the bulbous head of the caster shank, and prevent it from dropping out when the furniture is raised from the floor, was anticipated by the Kane & Brown patent of 1866, which showed the same spring, except that it was made of a separate piece of metal, and mechanically attached to the socket.

4. SAME—EVIDENCE OF INVENTION—EXTENSIVE USE.
   It is only when the patentability of a device is doubtful that its general use may turn the scale.

5. SAME—INFRINGEMENT.
   Infringement cannot ordinarily be escaped by merely cutting in two a device made in one piece, or by making integral an article formerly made in two; but to render such change a defense to the charge of infringement special facts must appear to show that it is not merely colorable.

6. SAME—FURNITURE CASTERS.
   The Berkey & Fox patent, No. 345,613, as to claims 3, 4, 5, and 6, covering a track plate for furniture casters, though narrow, was not anticipated, shows invention, and is valid. Also held infringed.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Willard Parker Butler, for appellant.
Arthur Denison, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from a decree sustaining two patents as valid and finding infringement. Both patents belong to the appellee, the Caster Socket Company, and both relate to improvements in furniture casters. The first patent involved was issued May 6, 1885, to Julius Berkey, and is numbered 318,533; the

second is dated July 13, 1886, is numbered 345,613, and was issued to Julius Berkey and Wm. R. Fox.

1. The Berkey patent is for an improved socket for receiving the shank of a furniture caster, said socket being provided with a spring made integral with one side of the socket, and from same. material. The object of this integral tongue or spring is to hold the caster in place so that it will not drop out when the furniture is lifted from the floor, but not so firmly but that it is readily removed and inserted. The socket is described as made in two parts, which when in use are put together, thus forming a socket, which may be driven into the opening provided for it. To better understand the device, we insert below certain drawings from the specifications:

Fig. 2 of the drawing is a plan view of the half socket, "A," and Fig. 3 is a sectional view of the same on the line X—X of Fig. 2. Fig. 5 is a plan view of the half of the socket without the spring tongue, provided with a ridge for holding the ball of the caster shank. Fig. 6 is a sectional view of the same half socket on line Y—Y of Fig. 5. Fig. 7 is a sectional view of the entire socket in position in the furniture with caster in place. The only claim of the patent is in these words:

"In a caster socket, the half socket, A, provided with a tongue, a, integral with and formed of a part of the half socket, A, substantially as and for the purposes described."

The prior art shows many forms of what are known as "hold-up casters." The patent to Kane & Brown of February 6, 1866, is beyond all question an anticipation, unless the fact that Berkey's spring is made integral with one-half of his socket constitutes a patentable, improvement. The Kane & Brown patent was for a socket made in two parts, each half containing a curved, flat spring "riveted in the inside," as described in the specifications. This spring performed the same function as the integral spring of the Berkey patent, and, to quote from the opinion of the court below, "only differs in that the tongue is mechanically attached, while the tongue in the Berkey device is formed out of one side of the socket." But is the mere making in one piece a structure which had theretofore been made of two or more pieces mechanically attached invention? Or, to put it in another form, is it a patentable invention to substitute for a riveted spring in a caster socket a spring made integral with the socket? A spring, either made integral with the supporting member or mechanically attached, for holding a pintle in place, was not new, and this the patentee concedes on the face of his specifications when he says, "I am aware that a spring is not broadly new for holding a pintle in place." The only ground, then, upon which it can be urged that Berkey has made a patentable improvement over the socket and spring of Kane & Brown, to say nothing of a long line of caster devices not so clearly approximating Berkey, is that Berkey has provided a spring made integral with one-half of a socket, in place of a spring riveted to the socket. In doing this he has not taken the idea of an integral spring from what counsel call the "furniture caster art," but has found such integral spring in common use in other arts as a well-known method of seizing and holding some other part of a structure in place. A large number of patents have been filed by appellant for devices in which a spring tongue or spring finger is shown attached integrally to the supporting member in distinction to being riveted thereto. Some of these are in somewhat analogous arts, as in watch sockets, pen and pencil sockets, candle sockets, etc. We need not specially consider these, for in the printed brief of the very frank counsel for the appellee it is admitted "that a spring tongue or a spring finger formed of the same piece of metal as the body of the article, and adapted to seize and hold some other article placed in contact therewith, was a common thing in sheet metal structure." But it is said that in the "furniture caster art" such a spring made integral with the caster socket is not shown, and that it may be invention to transfer a device from one art to another. For this, C. & A. Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, is cited. But the transfer has plainly been made from arts where the spring was integral with a socket, and where its purpose and function was precisely that to which it is applied in Berkey's device. No change in form has been made to adopt the device to a new application. No difficulties of adaption have had to be cleared away. Such a change from even a non-analogous art cannot be regarded as involving invention. The case in this aspect is governed by Stearns & Co. v. Russell, 29 C. C. A.

121, 85 Fed. 218, where Judge Taft, for this court, gave thorough consideration to the limits of the doctrine of C. & A. Potts & Co. v. Creager. There a device taken from button-making and printing-press machinery, for lifting and holding small articles by exhausting the air in hollow points, and applied in the pill-making art to hold pills while dipping them in a bath for the purpose of coating them in gelatine, was held not to involve invention. Said the court, in that case:

"Here the old use was lifting and holding paper and small articles, and the new was lifting and holding pills. We are of opinion that, notwithstanding the utility and success of the new application of the device to pill-dipping, the circumstances that no change or form was necessary to the new application, and that the functions or purposes new and old were not wholly different and distinct, but were substantially the same, make this a different case from Potts v. Creager and lead to a different result."

To the same effect is the decision of this court in L. Schreiber & Sons Co. v. Grimm, 19 C. C. A. 67, 70, 72 Fed. 671, 674, where a ball and socket joint was applied in a device for furnishing an adjustable seat for caster support. It was urged to be invention to carry the device from other arts to one in which it had not been used. Speaking for the court, Judge Severens said:

"The ball and socket joint was a common construction, and was in universal use in mechanics wherever the requirements indicated its utility. In this instance the requirement was for a joint between the saddle and its seat, which would permit the saddle to rock laterally and longitudinally so as to permit the surface of the saddle to adjust itself to the surface of the casks. The ordinary hinge susceptible of only one of these movements would not answer the purpose. It would seem that it would be obvious to a mechanic fairly skilled in his business to meet the requirement by interposing the ball and socket device. Again, no new appliances are here provided which affect the operation of the joint. That is perfect for all the functions that are required of it, and there is no new result substantially distinct in its nature. It is simply the case of an employment for a new use, and nothing more, and falls within the general doctrine of those cases in which it has been so many times held that the mere extension of a well-known device into another field of usefulness, where the transfer does not involve the faculty of inventive genius, will not support a patent. Tucker v. Spalding, 13 Wall. 453, 20 L. Ed. 515; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Ansonia Brass & Copper Co. v. Electric Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Manufacturing Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307,—where many of the previous cases are collected."

But it is said that the mere making in one piece a device theretofore made in two or more, which were soldered or otherwise mechanically attached, may involve invention. There are cases in which, under very special circumstances, such an improvement may show patentable invention. The case of Krementz v. S. Cottle Co., 148 U. S. 556, 13 Sup. Ct. 719, 37 L. Ed. 558, is relied upon as giving countenance to this claim. The device involved there was a collar button made out of one piece of sheet metal. Such buttons had been theretofore made out of two or more pieces soldered together. The improvements involved an improvement in form, strength, and lightness, and, being generally made of gold, an important cheapening in the cost. The case was a very close one, and finally turned upon its universal adoption. The case of How-

ard v. Stove Works, 150 U. S. 164, 14 Sup. Ct. 68, 37 L. Ed. 1039, involved a patent upon a stove grate, where the alleged invention consisted in casting in one piece an article which had formerly been cast in two pieces and put together by nuts and bolts. This was held not to involve invention. In Manufacturing Co. v. Holtzer, 15 C. C. A. 63, 67 Fed. 907, the circuit court of appeals for the First circuit held that the right to improve on prior devices by making solid castings in lieu of attached parts is so common and universal in the arts as to cast a heavy burden upon any one claiming patentability for such an improvement to show special reasons in support of his claim. The mere fact that an article made in one piece instead of in two mechanically attached is more durable, and the cost of construction cheapened, is not in itself enough to constitute invention. That result the court in the last case cited said was "the ordinary consequence of dispensing with joints by casting solid, well known in all the arts."

The conclusion from all the cases must be that the mere making in one piece of a device formerly made in two parts mechanically attached is not invention. The exception to the general rule must depend upon special facts indicating the presence of the inventive faculty in a degree greater than the mere mechanical knowledge exhibited by so simple an improvement. Much stress has been laid upon the alleged large use and sale of this improved socket. The evidence upon this point is not very forceful in respect to this particular invention. The sales were chiefly of a structure which included track plate and socket, or these in combination with a caster, the track plate and caster being the subject of other patents; and it is not made plain that any more of the alleged success of the sale of the track plate socket was due to the socket than to the track plate. However this may be, we do not think the question of patentability doubtful, and it is only when the patentability of a device is doubtful that the general use of the patented article may turn the scale. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707.

We find it unnecessary to consider the limitations upon this patent or the question of infringement. We are satisfied that the patent, for the reasons stated, is invalid, and the decree upholding it must be reversed.

2. The Berkey & Fox patent also relates to furniture casters. The inventor had several objects in view, but, so far as material to this suit, the object was "to provide an improved track plate for the anti-friction wheels, which plate serves also as a furniture protector," and "to secure the track plate to the furniture without the use of screws or nails." The only question here involved relates to the alleged infringement of this "track plate" of the patent. This track plate and its uses are thus described by the inventor as follows:

"The track plate, T, may be cast in the form shown or cut from sheet metal and then formed up. In the latter case it would not have the shoulder shown at n in the Fig. 1. The teeth on the outer and upper edge attach the plate to the wood, prevent the latter from splitting, and also insist in holding the plate and socket together in position on the furniture. The socket,

c, c', has a flange, F, on its lower end, which, when the socket is driven into position, combines with the teeth to hold the track plate firmly against the wood. This track plate is especially valuable when used on furniture requiring a caster block, as a portion of the teeth engage the frame of the furniture and the remainder engage the block, holding it securely in place. When used with the common caster, without the anti-friction wheels, the track plate is still of service in assisting to hold the socket more firmly in the wood, and in preventing the latter from splitting. On account of the peculiarly curved form of the track plate, as shown, it serves as a shoe, permitting the easy sliding of the furniture when the caster is temporarily removed, preventing the flange, F, from catching on the floor, and avoiding the necessity of chamfering the edges of the bottom of the leg."

We insert, for the better understanding, Figs. 1, 2, and 4 from the drawing:

Fig. 1 is a vertical sectional view of the caster when inserted, taken on the line X—Y of Fig. 2. Fig. 2 is a front view of the caster, track plate, and socket attached together and removed from the furniture. The track plate in question is shown at T in both figures, and no point in either figure is here involved which is shown below T. Fig. 4 is a perspective view of one part of the socket showing the flange, F, referred to in the claims involved here. There are six claims in the patent. Those here involved are 3, 4, 5, and 6, which are as follows:

"(3) In a furniture caster, the combination of a socket having a flange and a track plate with its central portion sufficiently depressed to receive the entire flange above the lowest surface of the plate when in position, substantially as and for the purpose described. (4) In a furniture caster, a track plate having the outer portion of its lower surface of the annular convex form, and the central portion of the depressed form, shown and described. (5) In a furniture caster, the combination of a track plate and a socket having a flange adapted to engage the said plate and hold the same onto the furniture, substantially as described. (6) In a furniture caster, the combination of the track plate, T, provided with teeth, t, t, and the socket, c, c', provided with flange, F, the flange adapted to hold the plate securely against the wood, and the teeth to prevent the wood from splitting, and to hold both more firmly, substantially as described."

Many earlier patents for caster track plates and sockets have been put in evidence as anticipations. They undoubtedly operate to limit the claims of the Berkey & Fox device to a track plate of the peculiar curved form of the one described and shown. Thus limited, none of the earlier devices present either that form or the advantages pointed out by the patentees as a result of the form. The principle function of the track plate in question aside from its function as a track for the wheels of a caster, anti-friction or not, which the inventor pointed out and claims as due to the "peculiar curved form of the track plate, as shown," is the fact that "it serves as a shoe," permitting the easy sliding of the furniture when the caster is temporarily removed, thus preventing injury to the floor, and also avoiding the necessity for chamfering the edges of the bottom of the leg. Another advantage claimed is that it is valuable when used on a caster block, "as a portion of the teeth engage the frame of the furniture and the remainder engage the block, holding it securely in place." Though narrow, we think the patent sustainable.

The question of infringement presents peculiar difficulties. The defendants below made their track plate in two parts instead of one; in other words, they have cut the track plate of the patent in two equal halves. But when in use the two constitute the track plate of the patent "having the outer portion of its lower surface of the annular convex form, and the central portion of the depressed form shown and described" in the drawings and specifications of the patent. If these halves were intended to perform separately some new function, or, when united, were adapted to some useful purpose not attainable by the track plate when made integral, the change might avoid infringement. But this is not the case. Again, the track plate and socket of the infringing device, instead of being separate structures, are made in one piece, and the dividing line between what would otherwise be the flange of the socket must be arbitrarily located. By thus uniting the track plate and the socket

it is claimed that infringement is avoided, inasmuch as the infringing device omits the flange, F, of the patent. By thus making in one piece the two parts of the patented device, no material change in form or function has been produced. The track plate itself constitutes a flange for the socket, so far as it was the function of the track plate to prevent the socket from being driven too far into the receptacle prepared for it in the leg of the furniture. By making the socket and track plate integral, the latter is held in attachment to the socket, an attachment maintained in the device of the patent by means of the flange of the socket. Neither the division of the track plate nor the uniting of the socket and track plate into one piece operate, when in use, to vary the "peculiar curved form" of the track plate of the patent, and the functions dependent on this form are precisely the shoe functions of the infringing device when the caster is removed. We are impressed with the belief that this division of one part and uniting of two others has been done solely for the purpose of escaping infringement. Narrow as the Berkey and Fox patent is, we cannot ignore the fact that, if such merely colorable modifications are to be sanctioned, the very essence of the patented device will have been appropriated. It is not broadly patentable to make in one part, without change of function, an article originally made in two or more mechanically attached. The converse of this is equally true. Infringement cannot ordinarily be escaped by merely cutting in two a device made in one piece, or by making integral an article formerly made in two. Bundy Mfg. Co. v. Detroit Time-Register Co., 36 C. C. A. 375, 94 Fed. 524. To escape infringement some special facts must appear to show that the change is not merely colorable.

The decree sustaining the validity of claims 3, 4, 5, and 6 of the Berkey & Fox patent, and finding that they have been infringed, is affirmed. The costs of this appeal and of the court below, so far as they have accrued, will be divided. The cause will be remanded for further proceedings in accord with opinion.