AVERY–LOEB ELECTRIC CO. v. MARKEL.

(Circuit Court of Appeals, Sixth Circuit. December 7, 1917.)

No. 3003.

1. PATENTS ⬤⟿328—INVENTION—INSULATOR.
The Markel patent, No. 878,302, for a two-part porcelain insulator knob composed of two duplicate matching and registering members, and having tenon fitting into a keeper mortise, claim 1, *held* void for lack of invention in view of the prior art.

2. PATENTS ⬤⟿24—"INVENTION"—MULTIPLICATION OF PARTS.
Ordinarily "invention" does not lie in merely making in two parts that which before was made in one.
[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

Appeal from the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by Harley R. Markel against the Avery-Loeb Electric Company. Decree for complainant, and defendant appeals. Reversed.

Wm. F. Hall and David P. Wolhaupter, both of Washington, D. C., and Watson, Stouffer, Davis & Gearhart, of Columbus, Ohio, for appellant.

Chester C. Shepherd, of Columbus, Ohio, for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and KIL-LITS, District Judge.

KNAPPEN, Circuit Judge. Suit for infringement of patent No. 878,302, February 4, 1908, to Markel. The device of the patent is a two-part porcelain insulator knob, composed of two duplicate (and thus interchangeable) matching and registering members, designed to protect the electric wires passing through it against contact with the nail or screw which fastens the knob to its support. Figures 3 and 4 of the patent drawings (here reproduced) are details in perspective of the duplicate parts.

[1] The first claim, which is the only one in issue, reads thus:

"1. An insulator having a two-part body consisting of a pair of duplicate matching members provided with similarly arranged wire openings, and each having a central guard tenon presenting a shoulder next to the adjacent wire opening, and a keeper mortise for the tenon on the other member."

In the drawings, *6* and *8* represent the wire openings, *9* the duplicate halves of the guard tenon, and *10* the duplicate halves of the keeper mortise. The nail or screw passes through the hole *11* in the guard tenon, and by this construction the block members are prevented from lateral displacement and the wires kept from contact with the screw or nail by the shoulder nature of the inclosing tenons. The District Court held the claim in question valid and infringed.

The advantages of having a knob formed of duplicate parts are conceded. But Markel was not the first to disclose an insulator made in exactly duplicate parts. Nichols had several years before shown an insulator composed of two exactly duplicate members, whose inclined abutting faces when brought together made a blocklike body, through which the nail or screw passed, and by which it was sepa-

rated from the two wires, which, as in Markel, lay one on either side of it and at different elevations. One of Nichols' patent drawings, giving a detailed perspective view of one of the members, is here inserted.

Nichols' device differed substantially from that of Markel only in that its guard was not in the form of a tenon fitting into a keeper mortise. The Trenton Porcelain Company, however, had marketed an insulator which, while not in duplicate parts, had a guard tenon upon one part which fitted into a keeper mortise in a complementary part, as illustrated by the subjoined cut.

The Trenton tenon and mortise performed the identical functions of those of Markel, and in precisely the same way. The General Electric Company had put upon the market insulators of a type similar to the Trenton, the tenon taking the form of a truncated cone. Evans also had shown a porcelain "cleat," as distinguished from a "knob," composed of two exactly duplicate matching and registering parts, the screw and wires being entirely isolated from each other.

Markel's advance over the prior art thus consisted merely in using, in Nichols' duplicate part knob, the Trenton guard tenon and keeper mortise theretofore used in sepa-

*Squared angular tenon for screw protection*

rate, complementary, but not duplicate sections, or, otherwise stated, in putting half of the Trenton guard tenon and one-half of its keeper mortise in each of two old duplicate sections, instead of having the entire tenon in one section and the entire mortise in another.

[2] We agree with the District Judge that Markel was not anticipated by Nichols. We also think neither the Trenton, the General Electric, nor the Evans devices direct anticipations. The important question, in our opinion, is whether what Markel did amounted to in-

vention, in view of the prior art. While we also agree with the District Judge that Markel's step did not consist merely in building up Nichols' table, we think the conclusion below failed to give due weight to the prior art, including the Trenton and similar devices. Ordinarily invention does not lie in merely making in two parts that which before was made in one (Standard Caster Co. v. Caster Socket Co. [C. C. A. 6] 113 Fed. 162, 169, 51 C. C. A. 109), and that is really what Markel did with the Trenton structure, in view of the prior use of porcelain knobs in duplicate parts. We recognize no element of novelty or invention in the so-called "shoulder" presented by Markel's central guard tenon. The Trenton guard tenon presented the same shoulder. The feature of oblique disposal of guard tenon and keeper mortise, with reference to the longitudinal center of the block, is not involved here.

Markel's device doubtless had utility, as evidenced by its commercial success, and by defendant's adoption of it. But giving due weight to the feature of commercial success, which, however, is not important when lack of invention is clear (McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Caster Socket Case, 113 Fed. 166, 51 C. C. A. at page 109), we think what Markel did fell short of invention.

The judgment of the District Court is reversed, and the record remanded to that court, with directions to enter decree finding claim 1 invalid.