## JOSEPH LAY CO. v. AMERICAN BRUSH & BROOM CO.

(District Court, N. D. New York. January 21, 1918.)

### No. 173.

PATENTS ☞328—VALIDITY—METAL CASE BROOM.
> The Lay patent, No. 946,234, for a metal case broom, the essential feature of which is the use of two-pointed nails or staples having both points beveled on the outer side to fasten the broom straw in the casing, the staples being drawn through one side of the casing against the inner surface of the other side, causing them in most cases to clinch by bending toward each other, and thus more firmly hold the straw, is void for lack of invention, in view of the prior art and analogous arts, in which the use of such staples for a similar purpose had long been known.

In Equity. Suit by the Joseph Lay Company against the American Brush & Broom Company. On final hearing. Decree for defendant.

This is a suit in equity to enjoin alleged infringement of United States letters patent No. 946,234, dated January 11, 1910, on application filed February 21, 1908, issued to Samuel C. Lay for "metal case broom," and for an accounting.

V. H. Lockwood and R. G. Lockwood, both of Indianapolis, Ind., for plaintiff.

Frank C. Curtis, of Troy, N. Y., for defendant.

RAY, District Judge. The patent in suit, No. 946,234, for a metal case broom, applied for February 21, 1908, and issued January 11, 1910, to Samuel C. Lay, has three claims, reading as follows:

"1. A metal case broom, including broom material, a metal cap surrounding the same, and two-point fasteners with each end beveled on one side that extend through one side of the casing and against the other side thereof, with the beveled ends turned and clinching the material.

"2. A metal case broom, including broom material, a metal cap surrounding the same, and two-point fasteners with the ends of each fastener oppositely beveled and extending through one side of the metal cap and against the

other side, with the beveled points of each fastener turned in opposite directions and clinching the material.

"3. A metal case broom, including broom material, a metal cap surrounding the same, and two-point fasteners with each end thereof beveled on one side that extend through one side of the casing and against the other side, with their beveled ends turned and clinching the material, one set of said fasteners extending through one side of the casing and another set extending through the opposite side of the casing, the oppositely located fasteners being similarly arranged and with their bent ends co-operating with each other for clinching the broom material."

The patent is for an improvement merely in the construction of this class of brooms, and the patentee says in the specifications:

"The object of this invention is to improve the construction of metal case brooms in order to strengthen the same, to cheapen their construction, and to make them so there will be no projections on the surface thereof that will catch in fabrics while the broom is being used. The chief feature of this invention consists in combining with a metal cap the broom material therein, and large two-pointed nails so that they form simultaneously both an upper and lower series of fasteners and the points thereof are each beveled on one side, preferably oppositely beveled, whereby said points turn in opposite directions for clinching the broom material. By using a staple and beveling the points thereof, the broom maker is enabled to control the direction of bending and clinching of the ends of the staples or fasteners, which is impossible with nails whether beveled or not, and also impossible with staples unless beveled. Since fasteners will not be effective unless they extend transversely of the fiber broom corn, this characteristic of the action of beveled staples is one of very great importance in the manufacture of factory brooms."

In point of fact the improvement on the prior art in this class of broom making consists in substituting for a single-pointed nail, having a head, a two-pointed wire nail "made by merely cutting ordinary wire slantingly into sections and bending the sections into U-shape." The wire, when thus slantingly and properly cut in sections and bent into shape, forms a two-pointed U-shaped nail, with the points beveled on opposite sides. They may be so cut as to leave both points beveled on the same side.

The broom has a handle projecting into the broom corn forming the broom proper, it may be other material, and this material is surrounded by a metal band, and it may be by a metal cap, and it may be by both, which bands, or band and cap (so called), perform the function of not only holding this material together, but of binding it more or less firmly to the handle. Such a metal case broom would not be durable; that is, the bands will not of themselves grasp and hold, when the broom is put to use, the material with sufficient firmness under differing conditions. This was well known, and in the prior art wire or wrought nails with a head had been used to unite the parts more firmly and durably. These pointed and beveled nails were driven through the band on one side, and on through the material forming the brush part of the broom, until they struck or met the metal band on the opposite side, when, because of the bevel and obstruction thus met, they would bend or curl up, and grasp some of the material with more or less firmness. Several nails could be, and, in the prior art, were, thus driven in from one side, and others from the opposite side. The head of such nails, when thus driven, on meeting

or reaching the metal band, would as a rule form or cause a more or less rough band surface. Another defect, or alleged defect, in the single-nail process, was that, unless firmly held by the fingers or otherwise, it would turn while being driven, and the upward bent or curl was as liable to be on the same line with the direction of the broom material as crosswise or transversely thereto, and consequently there would be no grasping of any part of the material. The patent says:

"Since fasteners [the nails] will not be effective unless they extend transversely of the fiber broom corn, this characteristic of the action of beveled staples [two-pointed U-shaped nails] is one of very great importance in the manufacture of factory brooms."

The patent also asserts:

"These nails [the staples, two-pointed nails] can be driven by machinery, because they can be mechanically handled and inserted with accuracy."

The patent asserts that this gives greater speed to the nailing process and that the staple or two-pointed nail—

"performs the function of two separate nails and in a much better way, for there is no projecting head to tear cloth or other material in a store or textile factory, or to enable the nails to work out, and the two ends of the nails are united, so as to contribute to the strength of the fastening."

It is difficult to see that the staple or two-pointed nail is less liable than the single nail to work out of the broom and band, as that will depend on whether the points reach the metal band on the opposite side of the broom and curl or bend up. If either nail fails in this, it will work out. The chances of getting the bend or curl are greater with the staple nail then with the single nail, as it has two points. Hence the probabilities are that in a given broom made with staples a less number will work out than in the case of the broom being made with single nails. The physical exhibits in the case show that a very large number of the nails, whether single-pointed or staples, fail to reach the band on the opposite side, and fail to clinch, and do or may work out or become loose. But these staples, or two-pointed nails, were old in this and analogous arts, and it seems to me the advantages of their use are perfectly obvious.

The idea of making a brush or broom with a metallic band or ferrule surrounding the broom corn, or bristles, and with nails driven in and against an interior metallic clinching plate there placed for the purpose of clinching, or curling, or turning up, the points of the nails, was old, and shown in United States letters patent No. 207,786, issued September 3, 1878, and granted to one Whiting. It is again shown in the brush or broom making art in patent to Bowditch, No. 334,336, issued in 1886, where are described and shown metal bands and nails properly upturned and clinched by striking against a hard surface or obstruction. In patent to Buckley, No. 387,854, dated August 14, 1888, we find staples or two-pointed nails used in manufacturing boots and shoes fully described. These are beveled at the points. The curling or bending is fully described and illustrated. The patentee says:

"My invention relates to improvements in staples, and it consists in forming the same with a crown of greater thickness than the legs, the latter having round inner and flat outer faces, and the faces being doubly beveled in the direction of their length, whereby, when they are clinched, their ends curve around and take increased hold on the leather, so that the staple provides a strong and reliable fastening, and is prevented from being drawn out in either direction. Referring to the drawings, A represents a wire staple, which is formed of the legs a a and the head or crown b. The legs are beveled on their sides from c to c' and from o' to the extreme points d; the bevels d c' being at a different angle from the bevels c' c. When the staple is driven into position, a suitable bed or anvil being provided for causing the deflection of the ends of the legs, said legs turn laterally and upwardly and curve around, forming well-developed eyes, which enter and re-enter the leather or other material to be stapled, the effect of which is to doubly clinch the legs in position, whereby, unless the legs and head break, the staple cannot be withdrawn by strain or power on the same in either direction."

In patent to Culbertson, No. 257,213, issued in 1882, we have a tack with a bar or elongated head, making the tack T-shaped; that is, the head is elongated, and this bending up or curling and binding process and effect is fully described. This is in the nail and nail-fastening art, and the patentee says:

"My tack A is made of copper or other malleable metal, and it consists of a round and nearly straight body, with a bar head resembling a letter T, and it has a tapered and slightly flattened point, so that, when driven through the leather and into contact with a piece of iron upon the reverse side, this point will be turned back and enter the leather from that side, so as to clinch or rivet it firmly. This tack is especially useful in securing the parts of harness together and in the formation of long heavy loops, the work being done more quickly than by sewing, and it will not rip."

In patent to Dick, No. 261,317, dated July 18, 1882, we have a staple used as a part of a button fastener. In patent to Dion, No. 360,863, dated April 12, 1887, we have a nail with a *rounded* head (so it will not catch cloth or tear it, or form a rough surface) for fastening leather "or other flexible materials" (which would include broom corn), and this is beveled so when driven it will bend or curve. Here the clinching, holding, and fastening functions are fully described. In patent to Dunn and Harris, No. 10,181, issued August 15, 1882, we have a wire staple, or nail, with the points beveled, fully shown and described. In this patent the purpose of beveling these staple nails is fully described.

We now come to an important patent for "broom heads," No. 114,120, dated April 25, 1871, and issued to one Charles Fiscus. It was cited by the examiner in the Patent Office when the patent now in suit was applied for and rejected by the examiner. In this patent the metal cap and band surrounding the broom corn is shown and described, as is the nailing process and curl of the nail and the function of holding and gripping the broom straw. The patentee says:

"The object of my invention is to provide a cheap and durable fastening or head for brooms, etc., more generally employed in breweries, and on other rough floors and places where dirt accumulates rapidly. It consists in a metal cap or head, through which nails are inserted for securing and holding the broom straw, and thus furnishing an improved article for the rough work required. In the drawing, A represents the broom head, made of tin, sheet metal, or like material. B is the broom straw, and C the handle of

the broom. *D* are nails, generally of wrought iron, or copper, or like material. The head *A* is made in two pieces, soldered or secured together in any suitable manner around its edges. This head is opened very wide for the admission of the broom straw, and after this is placed in its proper position the nails *D* are inserted into the holes on each side of the head, and the whole head then put under a presser clamp; and as it is drawn or pressed together, the nails, by coming in contact with the metal of the head on their opposite sides, are bent or curled, as plainly shown in Fig. 1, thereby securely holding or gripping the broom straw, preventing it from slipping out."

In patent to Goodfellow, No. 295,539, dated March 25, 1884, we have a machine for driving and fastening and clinching staples or staple nails. Other machines for the same purpose are in evidence. In patent to Jester, No. 446,523, dated February 17, 1891, we have staples or staple nails, beveled, and the patentee says:

"By having opposite faces of the legs cut away, they tend to hold the body of the staple in an upright position when driven in any object, and also when said legs are clinched in opposite directions (as is usually the case) the smooth exterior surface is presented."

In September, 1888, there was issued to Mandel and Henderson a patent, No. 389,661, for inserting and clinching staples, and the staple and process are fully shown. In patent to Lindt, No. 692,882, issued February 11, 1902, we have a machine for driving and clinching these staple nails, and in Figs. 19, 20, and 21 the beveled staple is shown.

### Lay Prior Patents.

July 12, 1882, one Joseph Lay, applied for, and in February, 1883, obtained, a patent, No. 272,890, for a broom which fully shows the metal cap acting as cap and band, and also a metal band lower down, and nails driven in on one side through the cap, and also other nails driven through the band, and curved or bent by coming in contact with the band on the opposite side, so as to grasp the broom corn or splints forming the brush part of the broom. This is quite fully illustrated. The patentee says:

"The head *b* is formed of broom corn, splints, or other suitable material bound together with one or more metallic straps, *d d'*, through which it is secured by nails to the flattened or wedge-shaped lower end of handle *h*. Cap *a a'* formed, as above described, in two parts, placed together with their edges interlocked, may be connected with handle *h* and head *b'*, attached thereto, by passing the cap over the upper end of the handle and sliding it down on the handle to head *b*, which should be firmly pressed into the cap. As cap *a a'* is constructed of thin and pliable sheet iron or other suitable metal, the pressure of handle *h* will readily cause the lower part of the cap to assume a shape to fit the handle. The broom may then be placed with one side of cap *a a'* on an anvil, and nails *c* driven into the upper side of the cap and through head *b*, between straps *d d.'* As the lower side of cap *a a'* rests on the anvil, the nails will not pass through the lower side, but will be turned by it, and clinch against the lower side of the broom head *b*, as shown in Fig. 2. The broom may then be reversed on the anvil, and nails *c* driven in like manner through the opposite side. One or more of the nails driven through the side of cap *a a'* should pass through handle *h*."

Here the driving of nails from opposite sides of the broom is fully described. This patented broom of Joseph Lay does not differ from

the broom of the patent in suit, except that, in the patent in suit, the two-pointed nail or staple is substituted for the single-pointed nail of Joseph Lay; that is, the patentee of the patent in suit has *selected* for use in broom making the two-pointed beveled nail or staple of the prior art, as it gives better results. The arrangement of parts, handle, broom corn, or splints, and band, or band and cap, where both are used, is the same, and the mode and manner of nailing is the same. Fiscus, of the prior art, shows one band, or cap and band, all in one. Bowditch shows one band. It was not invention to add a band, or even abandon the cap and substitute a band, or two bands. The functions were the same. It was no more invention to do this than it would be to tie two strings around a bundle of fagots in place of one.

Twelve years later, March 5, 1900, one Samuel C. Lay applied for, and in June of the same year obtained, a patent, No. 652,542, for a new and useful improvement in brooms, with two bands, one (called a case) at the top of the brush part and the other lower down. This upper band does not extend over the upper end of the broom corn, as shown in the Joseph Lay patent. As a broom properly made flares more or less, being bound together at the top, and again near the top, and not at the bottom, S. C. Lay made his case, or band, flaring; that is, broader or wider at the base than at the top. He very naturally inserted the broom corn filling from below—that is, at the wider mouth —for obvious reasons. The single claim of this S. C. Lay patent of 1900 reads as follows:

"In a broom, a wide flaring case formed by interlocking the ends of the metal in position to come in transverse alignment with the handle, filling inserted upwardly into the casing, a handle inserted downwardly into the filling, nails inserted near the upper edge of the case, and nails inserted near the lower edge of the case, said nails passing through one wall of the case and through the filling and through the handle and clinching against the opposite wall of the case, substantially as specified."

Here we have: (1) A wide, flaring case, formed by interlocking the ends of the metal in position to come in transverse alignment with the handle. This means simply that the strip of metal had its ends interlocked and passed around the broom. (2) Filling, such as broom corn, inserted upwardly into this casing, and (3) a handle inserted downwardly into this filling. It was much easier to put the filling in at the broadest end of this band or case, and the obvious thing to do, and what any sensible person would have done. So it was the obvious thing to do to push the handle of the broom down into the filling so far as necessary, about six or eight inches, instead of pushing the four or five feet of handle up through the filling unnecessarily. Then, (4) nails inserted near the upper edge of the case and nails inserted near the lower edge of the case, said nails passing through one wall of the case and through the filling and through the handle (not all of them, see drawing) and clinching against the opposite wall of the case. It is obvious that some of the nails were driven through the handle, to hold it in and bind the whole together firmly. The drawings show the clinched nails, the bent-up nails, which clinching or bending was caused by coming in contact on the opposite side, with the casing. The claim says nothing of driving nails from both sides, but Fig. 2

of the drawings show this distinctly. In this patent of 1900, No. 652,542, the patentee expressly says:

"The flaring shape of the case allows the lips of the filling to spread and give the brush a nice shape. The cord binding 10 (lower down on the broom) limits the spread of the filling."

This patent also describes the beveled faces of the nails and the purpose and operation of such beveling. It says:

"The tips of the nails have beveled faces 11, and the nails are driven through one wall of the case and through the filling, and where the tips strike the inner face of the opposite wall the tips turn and clinch in the filling. The direction in which the tip will turn is predetermined by noticing the direction of the beveled face, and the nails are driven so that opposing or opposite clinches will be on opposite sides of the same mass of filling, as shown in Fig. 2, and in this way I secure a firmer grip upon these masses of filling."

### Prior Use of Staples or Staple Nails in Broom Making.

As early as December 15, 1879, Charles Schosson and Romonds D. Markham, applied for, and, August 24, 1880, obtained, a patent for "a broom" in the construction of which the use of staples or staple nails is shown in the drawings, described in the specifications, and claimed in the single claim of the patent. Instead of a wide, thin metal band, as shown and described in the prior patents referred to, the patent has a wire band, which is fastened to the broom of usual construction by staples or staple nails; that is, two-pointed nails. As they are driven into wood, it is not necessary that the nails clinch.

When the broom is in shape, and is to be bound so it will stand wear and tear, a wooden brace is driven through the broom corn from side to side of the broom, or side end to side end thereof, at a suitable distance from the top. Through a hole in one end of this brace a wire is passed and looped over the end thereof, and then passed and drawn tightly around the outside of the broom in opposite directions as many times as the maker desires. Then this wire, or metal band, is fastened to the brace by driving staples—that is, two-pointed nails, which straddle the wire band—through the broom corn or other filling on all sides of the broom into this wooden brace so driven into the interior of the broom. The function of these staples, or two-pointed nails, is to bind and hold the band and broom corn firmly together and in place. If driving a staple or two-pointed nail into a broom of this old construction, in place or lieu of a single-pointed nail—the substitution of the former, old in the art and the operation of which was well known, for the latter—was the result of that mental conception, that flash of genius, which is not merely the result of the exercise of the reasoning process from known premises and facts, and which the law sometimes calls invention, then perhaps we can say that invention is disclosed in this substitution.

What *new* result was obtained? None. What *better* result followed the substitution? All that is claimed is that the beveled staple or two-pointed nail, after being driven through the metal band, will not and cannot turn, and hence a bending or upturning of the beveled point transversely of the broom corn can be insured, and the grasping of a portion of the filling of the broom made reasonably certain.

Hence the staple, properly beveled, is better than the beveled single-pointed nail. This was obvious. All the broommaker had to do was to look at the various kinds of nails and merely think—exercise his reason and good judgment—and select the nail that would not turn. If the single-beveled nails, after being driven through the metal band, did turn therein, as round ones might, but square ones would not and could not, unless force for the purpose was used, all the maker of brooms had to do, and all that was necessary to do, was to use either a beveled staple or a beveled square wrought nail. This idea would occur to any mechanic skilled in the art. He was called upon to make a suitable and wise selection and exercise judgment.

In the Patent Office this application for the patent in suit was rejected April 24, 1908, on Fiscus, No. 114,120; Lay, No. 272,890; Lay, No. 788,157, referred to later; Schosson and another, No. 231,500, on the ground the last two patents show the use of double-pointed nails and that there is no invention in using staples in place of the single-pointed nails shown in the other patents. The claims and specifications were then amended, and the application as amended was again rejected by the examiner March 29, 1909. An appeal was taken, and, only two of the three examiners being present, the rejection was reversed, and the patent issued. On this appeal the argument of the applicant stated:

"The chief feature of the invention is the combination with parts of the broom of a *two-pointed fastener with the two points thereof beveled on a certain side or with a certain relation to each other, so that, when the staple is driven in through one side of the casing and strikes the other side, the direction of bending of the ends will be predetermined,* whereby they will always cross the fiber of the corn, and, if desired, will bend towards each other around the corn. The point is the beveling of the two ends of the fastener, so that the direction of bending can be controlled."

It is seen that the point made and claimed was that by the use of the two-pointed nail, or staple, properly beveled, the direction of the curl or bend could be "predetermined, whereby they will always cross the fiber of the corn, and, if desired, will bend towards each other around the corn." And, said the applicant:

"The point is the beveling of the two ends of the fastener [staple], so that the direction of bending can be controlled."

But the use of beveled staples was well known. The applicant in dilating on this idea said further:

"Applicant's former patent, No. 788,157, refers to a beveled single nail, whereas a double nail with both points beveled performs functions impossible with a single nail. It is impossible for any one driving single beveled nails into a broom to control the direction of bending of the end of any nail, because the nails may turn. If the direction of bending of the ends of single nails cannot be controlled and a broom is driven full of the nails, their ends are liable to turn in any direction, so that many will be parallel with the broom corn and there will be no uniformity, system or method in the bending. The result would be a 'crazy' broom. The two ends of a staple cannot turn, as the staple prevents it, and by beveling the two ends of a staple the direction of bending of the ends of those staples can be controlled and made absolutely certain and systematic. That this is a vital improvement in the art would be admitted by anybody, it would seem, after careful consideration of it. The mere fact that in Fig. 2 of applicant's former patent the ends of the nails all

appear bent transversely of the fiber does not change one's conclusion about the matter. It is easy to bend those nails all alike in making the drawing, whereas it is evidently impossible in making a broom with single nails."

This was not a new idea in the use of staples or two-pointed nails. It is described and also shown in the drawings of the patent to Buckley, No. 387,854; to a degree in patent to Dunn and Harris, No. 10,-181; to a degree in patent to Frost, No. 274,418, where the bevel was used for the purpose, says the claim, "in order to enable the legs [of the staple] to separate from each other"—that is, spread apart, the direction of the spread being controlled by the bevel. In this patent the ends were not made to curl, as they did not meet a hard surface; but the principle of control by means of a bevel is shown. The same idea of controlling the direction of the bend or curl by means of the bend in staple nails is again expressed in the patent to Jester, No. 446,523, of February 17, 1891, and in the case of single nails in the S. C. Lay patent, No. 652,542, of June, 1900. What is true of controlling the direction of bend or curl in a single-pointed nail by means of the bevel is also true of the staple nail, and the whole contention is reduced to the single point that by substituting the beveled staple nail for the beveled single pointed nail the danger of the turning movement of the nail is obviated; that is, a staple nail driven through the metal band cannot turn in the broom corn filling as the heads of the two points or pegs are connected and the two entrance points or holes, and hence the two legs are distant from each other in a hard metal surface. S. C. Lay in his patent of 1900, says:

"*The direction in which the tip will turn is predetermined* by noticing the direction of the beveled face, and the nails are driven so that opposing or opposite clinches will be on opposite sides of the same mass of filling, as shown in Fig. 2, and in this way I secure a firmer grip upon the mass of filling."

The difficulty was in driving the single nail without its turning. No new or improved means were used by the plaintiff here to prevent such turning; but by a wise selection of the proper nail, viz., the staple nail, or two-pointed nail, one was selected and substituted which would or could not turn for the obvious reasons stated. It was not invention to make this selection for this purpose. It was not a discovery. It was common knowledge and obvious that a staple, two-pointed nail, could not turn when driven into a substance hard enough to prevent the whole staple turning therein; that is, one leg from cutting a circular path in the material into which driven. It is claimed, also, that the staple is more desirable, for the reason it can be driven by machinery. Is it invention to select from a number of nails, or two nails, that nail which can be driven by machinery, when the other cannot be? There is no pretense it was a new discovery that staples could be so driven. Machines for driving and clinching staples were old and well known, and several of these are in evidence. If speed in driving nails was desired, this was the obvious thing to do.

## Another Lay Patent.

The use of staples and clinching them in making brooms was old, as we see by turning to the patent to Frank R. Lay, applied for Janu-

ary 4, 1904, and granted April 25, 1905, No. 788,157. This patent shows the process of making this class of brooms from the beginning, including assembling the broom corn filling, the insertion of the handle, the surrounding of this filling with metal bands, the compression and shaping of the assembled parts, the driving of "suitable fastening devices through the retaining band and handle and stock (filling) on each side of the handle," and, lastly, staples driven through the fiber on each side of the handle and the metal band and the ends of such staples "clinched," preferably on the opposite side of the band, and also "an auxiliary band having its overlapping ends secured together by nails *15* driven into the pointed end *6* of the handle *7*, staples *18* being also driven into the broom head from the opposite sides of the band as shown," and they are shown clinched. This is what the patent says:

"While the broom head is being compressed, nails or similar fastening devices *11* are driven through the retaining band from opposite sides thereof into the handle *7*, said fastening devices securing the handle within the fiber and the band in position on the head. In order to hold the retaining band in contact with the cemented end of the stock, and secure the same in position after the broom head has been removed from the compressor, I drive staples *12* through the fiber on each side of the handle, the ends thereof being preferably clenched on the opposite side of the band, as indicated at *13*. An auxiliary retaining band *14* encircles the broom head a short distance below the retaining band *8*, said auxiliary band having its overlapping ends secured together by nails *15* driven into the pointed end *6* of the handle *7*, staples *18* being also driven into the broom head from the opposite sides of the band, as shown."

And further on the patentee says:

"*While by using staples, instead of nails, for fastening the band in position, a much larger contact surface is obtained and greater security assured.*"

In the face of this Frank R. Lay patent, this description, and the drawings of that patent, I fail to discover anything new or novel in the patent in suit. There are some slight, but no material, changes, and the elements of the combination and the principles are the same. The staples are used by being driven into and through each band, and are *preferably* clinched on the outer side of the band on the opposite side, but not necessarily so. All this is supplemented by the ordinary stitching below the bands "to reinforce the head and give the same the desired degree of stiffness." Plaintiff's broom and this Frank R. Lay patented broom each shows two metal bands, the supplemental stitching and staples driven through both bands and the filling and "clinched," it may be, on the *inside of the band* on the opposite side of the broom, and it may be on the *outer side*, but "preferably" on the outer side. The single claim of this patent reads:

"A broom head having the butt ends of its broom fibers exposed and saturated with pitch, a retaining band encircling the saturated portions of the head and having its overlapping ends interlocked, a handle having a pointed end inserted in the head, fastening devices passing through the interlocking ends of the retaining band and engaging the handle, staples engaging the band and head on each side of the handle, an auxiliary retaining band spaced from the first named band, staples passing through the auxiliary band and engaging the broom head, and fastening devices engaging the auxiliary band and the pointed end of said handle."

This language, so far as the staples are concerned, is quite broad. Staples which "engage" the band and head of the broom (broom corn or filling), and also staples which pass through the auxiliary band and "engage" the broom head, the ends of such staples being "*preferably*" *clinched* on the opposite side of the band, may engage the head by turning and grasping any material part or in any well-known manner. It was well known that staples could be and had been turned and bent, or bent up and curled, by coming in contact with a metal band, as we have seen. This patent to Frank R. Lay contemplated a curling and engagement of the points of the staples with the band or the material on the inner side of the band, but the inventor *prefers* the outside clinching.

The plaintiff's counsel in their brief say:

"Beveled pointed staples were known more than twenty years before Lay's invention (meaning patent in suit), as shown by the patents herein, but it never occurred to any other person during all that time to use staples, instead of nails, in making metal case brooms."

In 1904, about three years before the patent in suit was applied for, it *did occur* to Frank R. Lay to use staples in making metal case brooms. It is evident they were used in place of nails, but not to the exclusion of nails entirely. This Frank R. Lay patent does not say anything about the staples being beveled, but as beveled staples were well known, as was the purpose and action of the beveling, and as his staples when in position are bent systematically inwardly, so far as shown, it is evident that beveled staples were used. But, clearly, it was not invention for the plaintiff, in 1908, to *select* the beveled staple when he desired to control the direction of the bend or curl. It was the obvious thing to do. Plaintiff's counsel also say as to this alleged invention of Samuel C. Lay:

"The idea of driving two nails at once suggested to his mind the use of the staple with the two points, and when he tried that it became manifest that the prongs [legs of the staple] would go in and clinch the material, and the staple would not turn in the casing."

But the idea of two nails (in effect) driven into the object at the same time and by the same means was present with the man who first made or used a staple more than twenty years before, and the idea of clinching was very old, as was the idea of curling or bending up the ends so as to grasp the broom material. It was obvious that, if a single beveled nail would curl in a given direction if properly held and grasp the broom corn or broom material, the two legs of a beveled staple would do the same. This is not a case of "wisdom after the fact," but of general wisdom preceding the alleged invention and actually applied in making shoes and other things, and I think in the manufacture of this class of brooms.

In granting the patent and reversing the examiner, the two examiners in chief said:

"The examiner points out that the patents to Lay, No. 788,157, and Schosson et al., show the use of double-pointed nails for the purpose of fastening metal

caps or bands on brooms, and that Lay, No. 652,542, shows the use of beveled nails, so that the points will turn and clinch in the filling. He takes the view that, 'it being old to use beveled nails, no invention is involved in making the nails double-pointed, even if, as claimed by applicant, a better broom results.' But in neither the Lay patent, No. 788,157, nor in the Schosson patent, are the ends of the staples clinched. In the other patents, which show the nails beveled for the purpose of clinching them in the filling, there is nothing to prevent their turning and clinching in any direction; but by using a staple as applicant has done, and beveling its ends, the securing means is prevented from turning, and the direction in which the ends bend can be predetermined in driving the staples, so that the ends bend crosswise to the filling. In the present case applicant seems to secure a new result, and we therefore regard the claims as patentable. The decision of the examiner is reversed."

This assumes that it was Lay's idea to bevel the ends of the staples, which, as we have seen, is not the fact. Again, the beveling has nothing to do with the turning or nonturning of the nail or staple. That is determined wholly, in the case of a staple, by the character of the band into which driven. Again, there is no *new result*. The broom fiber was grasped and held by the clinching—upcurling—of the single nail, when it did not turn, as it is by the curling of the staple. The claim here is that, as the staple *could not turn*, there was *a better result* from its use, as there was more certainty of a clinching in the proper and desired direction. But this was obvious to any mechanic reasonably skilled in the art, or reasonably skilled in the use of nails. The location of the bevel determines, with reasonable certainty, the direction in which the single nail or the prongs of the staple will bend and curl, and hence the only thing necessary or remaining to be done was to *select* that nail which would not turn when driven into and through the band. Therefore use the beveled staple.

Carnagie v. Cambria, 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968, decided five to four, is cited by plaintiff, as is Loom Co. v. Higgins, 105 U. S. 580, 591 (26 L. Ed. 1177). In Loom Co. v. Higgins, Mr. Justice Bradley said:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce *a new* and beneficial result, never attained before, it is *evidence* of invention."

But such is not this case. Each and every element of the broom made according to the patent in suit is very old, and there is nothing whatever *new* in the mode of combining the elements. The only new thing claimed in this broom of the patent in suit is the presence of the old and well-known *beveled* staple, or two-pointed nail, driven against the inside face of the band on the opposite side, so as to clinch or grasp a part of the filling. But this is not a *new result*. The same result followed the use of the single-beveled nail, when it did not turn on being driven and had followed its use for years, and this was well known. If that result followed the use of the single-beveled nail, it surely would follow the use of the staple. There was nothing new in the staple not turning when driven into and through the metal band, as it had been used in the broom-making industry as shown in the patent of 1905, to Frank R. Lay, No. 788,157, where it was obvi-

ously shown that the staple would not and could not turn when driven through a hard surface, and also in the shoe-making industry and in general carpentry work. It is impossible for me to discover invention in selecting the beveled staple, when it was desired to use a nail which would not turn when being driven, or after being driven, into and through a hard metal band. The plaintiff is presumed to have known the characteristics of these beveled staples. No change was made in them, or in the construction and assembling of the broom. In place of the single-pointed beveled nail he used the staples. Assume that the plaintiff transferred this beveled staple from other arts into the broom-making art, he knew what it had done and would do, viz., on being clinched, bent, or curled up at the points, it would grasp with more or less firmness the inclosed fabric, or broom corn. Without change it performed the same function it did before, although not in the same structure. In Standard Caster & Wheel Co. v. Caster Socket Co., Ltd., 113 Fed. 162, 51 C. C. A. 109, the Circuit Court of Appeals held:

"The transfer of a device from one art to another does not amount to invention, where it performs the same function in both without any change of form to adapt it to the new use."

This holding was by Lurton, later of the Supreme Court, Day, now a member of that court, and Severens.

In L. Schreiber & Son Co. v. Grimm, 72 Fed. 671, 674 (19 C. C. A. 67) the court said:

"It is simply the case of an employment for a new use, and nothing more, and falls within the general doctrine of those cases in which it has been so many times held that the mere extension of a well-known device into another field of usefulness, where the transfer does not involve the faculty of inventive genius, will not support a patent. Tucker v. Spalding, 13 Wall. 453, 20 L. Ed. 515; Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 Sup. Ct. 601, 36 L. Ed. 327; Manufacturing Co. v. Cary, 147 U. S. 623, 13 Sup. Ct. 472, 37 L. Ed. 307, where many of the previous cases are collected."

This use of the staple in broom making, however, did not go so far as to involve the *transfer* of a device from one art to another, but simply the selection of that form of nail from other nails, which were used commonly in many arts and wherever a nail was desired. It involved no change in form or structure, as the prior art teaches, as we have seen, that the beveling was to be on the desired side to regulate the curve. It involved the application of the knowledge the prior art and articles of common use gave. I must not be understood as holding, or as finding as a fact, that the direction of the bend or curl of these staples properly beveled can be predetermined with any certainty, when driven into the broom head through the band or otherwise. The many burnt-out exhibits in evidence, where staples were used in the construction of the broom, demonstrate that a large percentage do not bend or curl at all, while some bend in one direction and some in another, and others in other directions. The efficiency of the single nail seems to be as great as that of the staple. The evi-

dence fails to establish any great or unusual demand for use of the so-called staple-made broom. The public seem to be indifferent.

I think the facts shown and prior art overcome any presumption of patentability. In view of the prior art, I find no invention disclosed, and that the patent in suit is void for want of patentable invention.