SMITH CANNERY MACHINES CO. v. SEATTLE-ASTORIA IRON WORKS et al. *

(Circuit Court of Appeals, Ninth Circuit.   November 30, 1919.)

No. 3270.

1. PATENTS ⬥328—INFRINGEMENT; FISH-DRESSING MACHINE.
    The Smith patent, No. 979,103, for a fish-dressing machine, claims 38, 39, 40, and 41, *held* valid and infringed.

2. PATENTS ⬥245—INFRINGEMENT; MECHANICAL EQUIVALENTS.
    Protection against the use of mechanical equivalents in a combination is governed by the same rules as in case of other patents; and where a combination patent marks a distinct advance in the art, the term "mechanical equivalent" should have a reasonably broad and generous interpretation.

3. PATENTS ⬥240—INFRINGEMENT; IMPROVED DEVICE.
    That an infringing machine is superior, more useful, and more acceptable to the public than that of a patent does not avoid infringement, where the essential features of the patented machine are used, unless its superiority is due to a difference in function or mode of operation, or some essential change in character.

4. PATENTS ⬥243—INFRINGEMENT; DOUBLE FUNCTION OF ELEMENT IN INFRINGING COMBINATION.
    The joinder of two elements of a patented combination into one integral part, which accomplished the purpose of both, does not avoid infringement.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by the Smith Cannery Machines Company against the Seattle-Astoria Iron Works, Thomas A. Heckman, and N. C. Nicholsen. Decree for defendants, and complainant appeals. Reversed.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied April 5, 1920.

Grosscup & Morrow, of Tacoma, Wash., and Hiram E. Hadley, of Seattle, Wash., for appellant.

Farrell, Kane & Stratton, of Seattle, Wash., for appellee Seattle-Astoria Iron Works.

C. H. Hanford, of Seattle, Wash., for appellees Heckman and Nicholsen.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. [1] The appellant brought a suit for infringement of two letters patent, which it owned as the assignee of the inventor, E. A. Smith. The patents are each for fish-dressing machine, the first of which is No. 796,538, issued on August 8, 1905, and the second is No. 979,103, issued on December 20, 1910. The court below found that there was no infringement and dismissed the bill.

The machines described in the patents are complicated, and the claims are many, for the reason that they include various operations in cleaning and preparing the fish, such as removing the heads, tails, and dorsal and ventral fins, as well as opening and cleansing the fish. The controversy centers about that portion of the combination which relates to cutting open the fish. Numerous prior patents had issued for fish-dressing machines, none of which had gone into successful use, for the reason that they all were deficient in automatic means for handling and opening fish of different sizes. The appellant's patents were the first to overcome that difficulty, and the appellant's machines went into universal use in the salmon packing industry on the Pacific Coast. At the time of the trial there were in use 283 machines under the appellant's patents. Said the court below:

"The devices of the patent in suit well-nigh took the entire field upon its introduction, and plaintiff is entitled to a liberal range of equivalents."

The feature that distinguished the appellant's machine from those which had preceded it is its flexibility, its capacity to receive and operate upon various sizes of fish as they come to the machine, and the essence of that portion of the combination which produces this result is that the cutting saw which rips open the belly of the fish is protected from cutting too deeply by a device which rests upon the body of the fish, and takes advantage of resistance upon the solid back of the fish; it being at the same time essential that in the operation the solid portion of the fish back of the visceral cavity shall not be cut.

In the appellant's machine, after the preparatory service of cutting off head, fins and tail, the fish is fastened on its back on a circular carrier and moved thereon tail end first. It approaches the splitter held by gripping devices and guides so adjusted that the fish is gradually and firmly centered, so that the splitter, which is a small circular saw, will cut along the medial line of the fish belly, beginning at the vent. The splitter is operated in a frame at the free end of a pivoted arm which has no lateral movement, but is permitted movement to and from the carrier. Attached to the frame is a shoe consisting of

two parallel plates between which the saw rotates. The plates are so formed and placed as to permit the saw to begin its splitting function, and, after the splitting has progressed a short distance, the lower edges of the plates press on the inside of the back of the fish, and so adjust the movement of the saw that it shall not mutilate the back of the fish. But, before the plates enter the cavity of the fish, the depth of the cut is regulated by pressure on the outside of the fish, accomplished by means of flared sides on the forward extension of the plates. The rear ends of the plates are so shaped that they turn the sides of the fish over outwardly after it has been split open, throwing the belly inside out, and so holding it open for the operation of the cleaning mechanism.

The appellees' machine is covered by a patent issued on February 27, 1917, to N. C. Nicholsen and T. A. Heckman, letters No. 1,217,809. The appellees' apparatus is mounted on a quadrilateral frame, lengthwise of which is a V shaped trough, in the bottom of which chains are carried by sprockets. On each link of the chain is set a sharpened pin so placed as to engage the fish near the back as it comes upon the trough, and carry it the length of the trough. A spring presser holds the fish against the chains, and aids in centering and fastening the fish back downward firmly against the chains. The fish-splitting mechanism is described as of the form of a plow of two moldboards, so formed as to turn furrows in opposite directions, the perpendicular sides of which moldboards are parallel and in close proximity, leaving between them a slot in which a circular saw is revolved. The plow, together with the saw, is attached to the free end of a shaft, the other end of which is pivotally attached to and supported on the main frame. The pivotal attachment permits the splitting device to move to and from the trough, and it has no lateral movement.

As the fish, with its head removed, approaches the saw, head end foremost, the toe of the plow enters the ventral cavity, and by gravity presses upon the back of the fish, and the saw which revolves in the same frame to which the plow is attached, automatically accommodates itself to the size of the fish; the varying depth of the fish body moving the saw up and down, and thus regulating the depth of the cut. As the fish is ripped open, the moldboards of the plow spread it open and turn the fish inside out, during which operation the base of the plow rests upon the solid back of the fish; the periphery of the saw being slightly above the base of the plow. In the rear of the plow and above, over the trough, there are forked arms pivotally supporting two metallic rods, which are not fastened to the moldboards of the plow, but come in such proximity to it to engage the inner surface of the fish belly as it is spread open outwardly, and then hold the fish so as to permit the action of the fish-cleansing devices. The toe of the plow is a necessary part of the automatic mechanism by which the depth of the splitting saw is regulated, and by which the defendant's machine is susceptible of operation on fish of different sizes.

The following are the claims of the appellant's patent, No. 979,103, which are principally involved:

"38. In a fish-dressing machine, a frame, a carrier supported thereon for movement, means on the carrier for holding a body, a splitter arranged in the path of said carrier, means swingingly connected with the frame for supporting said splitter, and shoes on opposite side of said splitter swingingly connected to said last means.

"39. In a fish-dressing machine, a main frame, a carrier supported thereon for movement, means on the carrier for holding a body, a frame swingingly supported on said main frame, a splitter supported by said last frame, a yieldingly pressed means connected with said last frame for independent movement toward and from the carrier, and shoes on said last means disposed to engage the fish body to regulate the depth of cut of said splitter."

Claims 40 and 41 add to the elements of the foregoing claims the members whose function it is to ·spread the cut-open body of the fish and expose the whole cavity to the body cleansing devices.

We think that the appellant's claims are readable upon the appellee's machine, notwithstanding the fact that in the operation of the appellant's machine the fish go tail end first, while the reverse is true of the appellee's machine. The claims of the appellant's patent contain no limitation to either mode of operation. Comparing the two machines we find that the plates between which appellant's splitting saw revolves extend slightly below the periphery of the saw and yieldingly press upon the inside of the back of the fish after the first cutting movement. This pressure regulates the movement of the plates to and from the fish, and the flaring tops of the plates engage the fish before it is sufficiently opened to permit the bottom of the plates to perform their function. This function in·the appellee's machine is performed by the bottom of the plow which constitutes the means which by pressure on the body of the fish govern the movement of the appellee's frame to and from the fish, and thus regulate the depth of the cut. The appellees have thus, we think, availed themselves of the essential features of the appellant's combination.

[2, 3] Where a combination patent marks a distinct advance in the art to which it relates, as does the appellant's invention here, the term "mechanical equivalent" should have a reasonably broad and generous interpretation, and protection against the use of mechanical equivalents in a combination patent is governed by the same rules as patents for other inventions. Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945. The fact, if it be a fact, that the infringing machine is superior, more useful, and more acceptable to the public than that of the appellant, does not avoid infringement, so long as the essential features of the appellant's patented machine are used, unless its superiority is due to a difference in function or mode of operation or some essential change in character. Morley Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715; Hoyt v. Horne, 145 U. S. 302, 12 Sup. Ct. 922, 36 L. Ed. 713; Lourie Implement Co. v. Lenhart, 130 Fed. 122, 64 C. C. A. 456; Diamond Match Co. v. Ruby Match Co. (C. C.) 127 Fed. 341; Whitely v. Fadner (C. C.) 73 Fed. 486.

The trial court, referring to the "yieldingly pressed means" in appellant's claim 39 connected with the saw frame "for independent movement toward and from the carrier," reached the conclusion that the "independent movement" of the shoe distinguishes the appellant's patents from that of the appellees', and observed that without such

"independent movement" there would be nothing to distinguish the appellant's cutting device from that of the prior Haigh patent, No. 673,255. To this we are unable to agree. The words "independent movement toward and from the carrier," as shown by the plans and specifications of the appellant's patents, is not a movement independent of the cutting frame; but the expression "independent movement" is used to indicate that the movement of the "yieldingly pressed means" is not subject to control by other means than by pressure on the fish, and not that it is independent of the movement of the saw frame to and from the carrier. The shoe in the Haigh patent, as indicated by the drawing thereof is a shoe which, it is true, has the same purpose as have the shoes in the patents here involved; that is, to regulate the depth of the cut of the saw. But it plainly appears from the drawing that Haigh's shoe rides on the surface of the trough in which the fish travels, and not on the body of the fish. In that distinction is found the advance which Smith made in the art, and which made his combination successful.

[4] The decision of the court below was influenced, also, by the consideration that the appellees' plow, in addition to the function of regulating the movement of the saw and spreading the side flaps of the split fish, performs the additional function of removing the viscera. But this does not avoid infringement. In Pedersen v. Dundon, 220 Fed. 309, 136 C. C. A. 143, this court said:

"Neither the joinder of two elements of a patented combination into one integral part, accomplishing the purpose of both, nor the separation of one integral part into two, which together accomplish substantially what was done by the single element, will avoid a charge of infringement"—citing Bundy Mfg. Co. v. Detroit Time Register Co., 94 Fed. 524, 36 C. C. A. 375; Standard Caster & Wheel Co. v. Socket Co., 113 Fed. 162, 51 C. C. A. 109; H. F. Brammer Mfg. Co. v. Witte Hardware Co., 159 Fed. 726, 728, 86 C. C. A. 202.

It is our conclusion that the appellees have infringed claims 38, 39, 40, and 41 of the appellant's patent, No. 979,103.

The decree of the court below is reversed, and the cause is remanded, with instructions to enter a decree in accordance therewith.