## ELLIOTT MACH. CO. v. P. B. APPELDOORN'S SONS CO.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1920. On Petition for Rehearing, November 5, 1920.)

### No. 3367.

1. **Patents ☞168(2)—Inventor, acquiescing in rejection of claim, estopped from thereafter asserting it.**

    Where the patent office rejects a claim covering a device on its merits, and the rejection is acquiesced in, and the patent issued, the applicant cannot afterwards be permitted a construction of the claims allowed wide enough to embrace the claim which was rejected.

2. **Patents ☞174—In crowded art, inventor is entitled only to his own device.**

    A patentee of a new machine acquires a monopoly as against all formal variations; but if the advance is gradual, so no one can claim the complete machine, each inventor is entitled only to his own specific form of device.

3. **Patents ☞328—799,549, for a button-setting device, not infringed.**

    Patent No. 799,549, claim 4, for a button-feeding mechanism for a button-setting device operated by foot or other power, *held*, in view of the prior state of the art and the patentee's acquiescence in the rejection of the original claim, which, as shown by the file wrapper, was not allowed until a combination was described, limited to the particular construction, and, as limited, not infringed.

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Suit by the Elliott Machine Company against the P. B. Appeldoorn's Sons Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Fred L. Chappell, of Kalamazoo, Mich. (Edgar H. Johnson, of Grand Rapids, Mich., on the brief), for appellant.

Chas. W. Owen, of Toledo, Ohio (Owen, Owen & Crampton, of Toledo, Ohio, on the brief), for appellee.

Before DONAHUE, Circuit Judge, and COCHRAN and WESTENHAVER, District Judges.

WESTENHAVER, District Judge. This is a suit for infringement of United States letters patent No. 799,549, issued to William E. Elliott, September 12, 1905. The defenses are invalidity and noninfringement. The court below, being of opinion that claim 4, the only one in issue, should be limited to the specific construction therein described and claimed, held that it was not infringed and dismissed the bill. From this decree, plaintiff appeals.

Elliott's patent is for certain improvements in a class of button-setting machines which are operated by foot or other power, and in which the buttons are fed from a hopper or chute to the clinching anvil or die. This machine is particularly adapted to attach buttons to shoes by means of wire staples, which are automatically formed in the machine from a spool or coil of wire. The buttons are delivered from a hopper into a chute, down which they slide in a single-file column to the wire-receiving position. The button-feeding mechanism is adapted to take the first button from the column, push it into a wire-receiving position, and hold it there while the wire is being threaded through the eye and until the staple driver has come into position to drive the staple through the fabric. While the staple is thus being driven and clinched, the feed finger of the button-feeding mechanism is returned into position ready to repeat the operation. These operations are performed by means of an operating plunger, to which the power is applied by a foot treadle or other suitable device.

Claim 4 relates solely to this button-feeding mechanism. It is desirable, if not necessary, that different sized buttons should be placed and held in position, and the feeding mechanism is provided with a compensating or lost motion feature, so that, after the button is fed into its position, the actuating mechanism may complete its normal operation of driving and clinching the staple. The controversy here turns on the special means of compensation employed in the plaintiff's and defendant's respective constructions. Plaintiff's and defendant's button-feeding mechanisms are best shown by the accompanying illustrations:

## PLAINTIFF'S STRUCTURE

## DEFENDANT'S STRUCTURE

Claim 4, covering plaintiff's construction as above illustrated, contains four elements: (1) A button feed finger, *12*; (2) a feed arm *7*; (3) a feed lever *6*; (4) a spring connection, *10*, between the feed lever and the feed finger, adapted to allow the feed lever to complete its normal stroke after the feed finger is arrested by the stoppage of the button. The feed finger is connected to the feed arm by a pivot, *70*. The feed lever and feed arm are fulcrumed on a common pivot, *69*. They have a pin and shoulder connection, *8* and *9*, whereby they have a pivotal movement together in one direction and a relative pivotal movement in the opposite direction, so that, while operating in one direction, they are in effect an integral lever, and, while operating in the opposite direction, a split lever. A spring, *10*, connects the two together, and is adapted to permit the feed lever, *6*, to complete its normal movement after the movement of the feed finger is arrested by the stoppage of the button. The operating link, *3*, is pivoted rigidly at its lower end to the feed lever, *6*, and has a pin and slot connection at its upper end with the operating plunger. This mechanism is operated by the up and down movement of the plunger and co-operates in the manner briefly set forth above, with the staple forming and clinching mechanism of the machine.

Thus it will be seen that the compensating or lost motion device inheres primarily in the split lever construction of the feed lever and feed arm, and the spring connection between the feed lever and feed finger, whereby the operating link and the feed lever are permitted to complete their normal stroke in order to drive and clinch the staple after the feed finger and the feed arm are stopped by the button. As will appear later on examination of the file wrapper history of the patent application, the patentable novelty of this construction was found to inhere in these features, and claim 4 was allowed only because of the introduction of a feed arm as a fourth element of the combination, and the spring connection adapted to function in this specific manner.

Defendant's structure, as above illustrated, has a feed finger, *1*, connected by a pivot, *10*, to a feed lever, *2*. This feed lever is fulcrumed on the pivot, *3*, attached to the frame of the machine. Its lower end has a pin and slot connection with the operating link, *5*, the upper end of which is rigidly pivoted to the plunger. A spring, *4*, holds the feed finger in yielding engagement with the top of a button while being fed. A tension spring, *6*, connects the pin at the lower end of the feed lever with the operating link. In actual operation, when the button feed finger and the feed lever have brought the button into staple-receiving position, and are positively stopped, the operating link and plunger are allowed to complete their normal stroke by reason of the spring, *6*, yielding and thereby permitting the operating link, *5*, to move relatively to the lower end of the feed lever.

This is the reverse of the mode of operation of plaintiff's construction. The feed lever, also, is not made up of a lever and a feed arm having pivotal movement together in one direction and a relatively pivotal movement in an opposite direction, as in plaintiff's construction, but is an integral, and not a split, lever. Plaintiff contends, however, that defendant's operating link, *5*, is the equivalent of its feed lever, *6*; that defendant's feed lever, *6*, is the equivalent of its feed arm, *7*, and that the pin, *8*, operating in the slot, *7*, is the equivalent of the abutting surfaces on its feed arm and feed lever, whereby pivotal movement together in one direction and relative pivotal movement in an opposite direction are obtained, and, further, that defendant's spring *4*, connecting the feed finger and feed lever, and the spring *6*, are the equivalent of its spring *10*. The charge of infringement rests primarily upon these contentions.

[1-3] In passing on this charge of infringement, a brief review of the file wrapper history of plaintiff's patent and of the prior art will be helpful. Elliott's original application described and claimed a combination of a feed finger, a pivoted lever attached to said feed finger, and a spring connection, substantially as described. This claim was rejected on two earlier patents issued to him, being Nos. 526,012 and 552,869. Later he amended the claim, describing a combination of a button feed finger and a feed lever, together with a spring connection between the two, to allow the feed lever to complete its normal stroke after the feed finger is arrested by the stoppage of the button, substantially as is described. In support of this amended claim and in order to avoid the references cited, he said:

"In all the references cited against the feed fingers, the fingers are provided with a slot, and have a longitudinal movement in order to adjust the fingers to buttons of different sizes. In the present invention, applicant has obviated the necessity of using a slot, and pivots the feed finger to the lever, and the movement of the finger upon its pivotal attachment forms a sufficient adjustment to adapt the same to buttons of all sizes."

The amended claim, despite this argument, was again rejected on patent No. 552,869. The applicant acquiesced in these rejections, and substituted an amended claim in the language of present claim 4, which was finally allowed. In submitting it, he said:

"This claim as now presented is thought to be patentably distinguished from the state of the art, as the elements therein recited are not disclosed."

Thus it appears that the patent examiner rejected the original and amended claims because of the prior art, and required the substitution of a narrower claim, which calls for the feed arm as an element, and of a spring connection between the feed finger and the feed lever, functioning in the manner described, in order to avoid conflict with that prior art. The applicant acquiesced in these rejections and in the examiner's construction of the claims and of the prior art. It is settled law that he is bound thereby, and is now estopped to assert a different or a broader construction. In Frey v. Marvel Auto Supply Co. (6 C. C. A.) 236 Fed. 916, 921, 150 C. C. A. 178, 183, Judge Knappen says:

"It is the broad, general rule that, where the Patent Office rejects a claim covering a device on its merits, and the rejection is acquiesced in and the patent issues, the applicant cannot afterwards be permitted a construction of the claims allowed wide enough to embrace the claim which was rejected" (citing cases).

To the same effect are Garland v. Quinn (6 C. C. A.) 242 Fed. 267, 270, 155 C. C. A. 107; Van Manen v. Leonard (6 C. C. A.) 248 Fed. 939, 161 C. C. A. 57; Arnold-Creager Co. v. Barkwill Brick Co. (6 C. C. A.) 246 Fed. 441, 158 C. C. A. 505; Ventilated Cushion & Spring Co. v. D'Arcy (6 C. C. A.) 229 Fed. 398, 143 C. C. A. 518; Morgan Envelope Co. v. Albany Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500.

This file wrapper history indicates, and the fact is, that Elliott's invention was made in an old and crowded art. Button-setting machines of this general type, with button-feeding mechanisms containing compensating and lost motion devices, to take care of the difference in size of buttons, had been in use for many years. Elliott himself seems to have been a prolific inventor of button-feeding machines. In addition to the two patents issued to him, as cited by the patent examiner, he had obtained patent No. 408,700, August 13, 1889, and No. 799,-550, issued September 12, 1905, on an application dated two years earlier than the application for the patent now in controversy. In addition thereto, we have United States letters patent No. 265,532, issued October 3, 1882, to J. H. Morley, and No. 386,856, issued July 31, 1888, to J. F. Thayer, both for button-attaching machines.

An extended review thereof is not necessary. It is sufficient to examine briefly the two cited by the patent examiner. The button-feeding mechanism of the machines therein described and claimed contained three elements only—a feed finger, a feed lever, and the spring connection between the two. In patent No. 526,012, the means of compensation was a pin and slot connection between the feed finger and the feed lever, with a spring connecting the two together. This construction is also present in No. 408,700. Elliott in his testimony says that the objection to this form of construction was the difficulty of keeping the feed finger in alignment, and that guide plates were applied on both sides to hold it in line. Patent No. 799,550 was applied for and obtained by him on this construction, which he says did not overcome the difficulty to his entire satisfaction. The patented

construction was invented and designed to remedy this difficulty. In so doing, he departs from the pre-existing compensating devices, in which there is a relative sliding movement between two members, the feed finger and feed lever connected by a spring, and resorts to the relative rotation of two members about a common pin or pivot as a means of compensation.

In Railway v. Sayles, 97 U. S. 554, 24 L. Ed. 1053, it was held:

"A party who invents a new machine never used before, and procures letters patent therefore, acquires a monopoly as against all merely formal variations thereof; but if the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete thing, each inventor is entitled only to his own specific form of device."

See, to the same effect, Ross-Moyer Mfg. Co. v. Randall (6 C. C. A.) 104 Fed. 355, 43 C. C. A. 578; Rich v. Baldwin, Tuthill & Bolton (6 C. C. A.) 133 Fed. 920, 66 C. C. A. 464; Russell Grader Mfg. Co. v. Zeig Mfg. Co. (6 C. C. A.) 259 Fed. 575, 577.

The foregoing principle is applicable here. Elliott made an improvement to an existing feed mechanism in a button-setting machine. He made an improvement only in the means of compensating for the lost motion necessary in feeding different sized buttons. He is entitled to claim only his specific form of device, and every other inventor is entitled to design and use any new form of device not embodying his.

Applying these principles to the present case, we are of opinion that defendant's construction does not infringe. The feed arm as an element is wholly lacking. There is no spring connection between the feed lever and the feed finger of the kind described and claimed, operating in the same manner and performing the same function. The feed lever is integral, and not a split lever, having pivotal movement together in one direction and a relative pivotal movement in the opposite direction. Nor does defendant's construction function in the same manner as plaintiff's. The feed lever is not permitted to complete its normal stroke after the movement of the feed finger is arrested by the stoppage of the button; on the contrary, when the button is in position, the movement of the feed finger and feed lever is positively stopped, and it is the operating link and plunger which complete their normal stroke.

In our opinion plaintiff's several contentions that defendant's feed lever is the mechanical equivalent of its feed arm; that defendant's operating link is the mechanical equivalent of its feed lever; that defendant's pin and slot connection between the operating link and the feed lever, with the connecting spring, are the mechanical equivalents of plaintiff's feed lever and spring connection between the lever and feed finger—are not sound and cannot be sustained. Defendant's operating link is not a lever in any proper sense of the word. Defendant's spring 4 performs no function except to hold the feed finger firmly in contact with the button, and is not adapted to permit the feed lever to complete its normal stroke. Defendant's construction has really the three elements only of the prior art, such as were embodied in the original and amended claims rejected by the patent examiner, and is, as respects the means of compensation, more akin to the rel-

ative sliding connection between the feed lever and feed finger of the prior art than to plaintiff's present construction. Defendant has, in fact, adopted the longitudinal movement emphasized by Elliott in distinguishing in the Patent Office his present invention from the prior art, made some changes, if not improvements, in the several parts, and transferred the slot, pin, and spring to another position in the machine.

Being of the opinion that the charge of infringement is not sustained, it becomes unnecessary to express any opinion as to the validity of claim 4.

The judgment of the lower court should be and is, affirmed.

## On Petition for Rehearing.

PER CURIAM. Appellant, in his petition for rehearing, criticizes the expression in the opinion at page 986: "This is the reverse of the mode of operation of plaintiff's construction." This expression, if applied to the entire mode of operation described in the preceding paragraphs, is too broad, and is perhaps misleading. It should be limited, as the context shows, to the specific operation of the feed arms of the two different constructions under examination. In defendant's, the feed arm is positively stopped on contact of the feed finger with the button, and the operating link 5 thereafter completes its normal stroke. In plaintiff's, the feed arm is not thus stopped, but is permitted to complete its normal stroke by means of the split lever and tension spring designed and functioning in the manner specifically described. It was in this limited sense that the criticized language was used. Due consideration has been given to the new arguments advanced in support of the application for rehearing. We are, however, content with the conclusion and opinion already announced and filed, except as herein modified.

The application is denied.