## N. O. NELSON MFG. CO. v. F. E. MYERS & BRO. CO.

Circuit Court of Appeals, Sixth Circuit. April 4, 1928.

### No. 4921.

1. Patents ⬤➡168(2)—Patentee's acquiescence in requirement that words, "in substantially vertical plane," be inserted, and making of amendments estopped his assignee from denying that claims were for detachable securing of pump-head against vertical face of power-head casing.

Patentee's acquiescence in requirement that words, "in a substantially vertical plane," be inserted in claims 4 and 6 of patent No. 1,385,-141, relating to power-heads of pumping apparatus, and making of amendments accordingly estopped plaintiff, assignee of patent, from denying that claims were for detachable securing of pump-head against vertical face of power-head casing.

2. Patents ⬤➡168(2)—Words inserted in other claims of patent could not be read into claim in question.

Where words, "in a substantially vertical plane," were inserted in claims 4 and 6 of patent No. 1,385,141, relating to power-heads of pumping apparatus, but such words were omitted from claim 7, they could not be read into claim 7.

3. Patents ⬤➡328—1,385,141, claim 7, relating to pump power-heads, held not void for lack of invention.

Patent No. 1,385,141, issued July 19, 1921, to P. A. Myers, claim 7, covering, in pumping apparatus, combination with power-head comprising casing, power shaft, transmitting gears, and vertical reciprocating member mounted in casing and operated by such shaft and gearing, of substantially vertical pump-head detachably secured to said casing, and adapted to support vertical conventional pumping mechanism, including vertical piston rod connectible to vertical reciprocating mechanism, held not void for lack of invention.

4. Patents ⬤➡167(1)—Court may look to specification for construing language and asserting meaning of claim.

Court may look to specification for construing language and asserting meaning of patent claim.

5. Patents ⬤➡64—Prior patents are part of prior art only by what they disclose on face and when they disclose every element of combination of claim in suit.

Prior patents are part of prior art only by what they disclose on their face and only when

they disclose every element of combination of claim in suit.

**6. Patents** ⚎26(1¼, 2)—**Although elements of combination are old, invention exists if combination produces new and useful result or effects old result in new way.**

Although every element of patent combination is old, invention still exists if combination either produces new and useful result or effects an old result in a new and materially better way.

**7. Patents** ⚎72(4)—**Patent is not void for anticipation because prior patent covers device which might be so constructed as to be capable of same use as that of later patent.**

Patent otherwise valid is not void for anticipation because prior patent covers device which might be so constructed as to be capable of same use as that of later patent, where prior art gives no suggestion that such use was contemplated and no specific directions for such construction.

**8. Patents** ⚎328—**1,385,141, claim 7, relating to pump power-heads held infringed.**

Patent No. 1,385,141, issued July 19, 1921, to P. A. Myers, claim 7, relating to power-heads of 'pumping apparatus, *held*, infringed.

**9. Patents** ⚎328—**1,385,143, claim 1, relating to pumping apparatus, held not infringed.**

Patent No. 1,385,143, claim 1, relating to pumping apparatus, issued July 19, 1921, to P. A. Myers, *held*, not infringed.

**10. Patents** ⚎328—**1,393,306, claim 1, relating to pump power-heads held infringed.**

Patent No. 1,393,306, claim 1, relating to power-heads of pumping apparatus and covering "in a power-head, the combination, with a casing adapted to contain a quantity of lubricant, rotatable operating mechanism therein, and a vertical guide within the casing, of a slide mounted on said guide, adapted to reciprocate and having means for connection with an apparatus to be operated thereby, and an operating connection between said slide and the rotatable actuating mechanism within the casing," *held*, infringed.

**11. Courts** ⚎290—**In patent infringement suit, motion to dismiss charges of unfair competition because suit was not brought in district of residence of either of parties held properly denied (Jud. Code, § 51 [28 USCA § 112]).**

Under Judicial Code, § 51 (28 USCA § 112), in patent infringement suit, where bill charged unfair competition in fraudulently selling infringing apparatus in simulation of physical make-up, arrangement of parts, and general appearance of plaintiff's structure, motion to dismiss that feature for lack of jurisdiction because suit was not brought in district of residence of either of parties *held*, properly denied.

**12. Courts** ⚎290—**Where patent is held valid and infringed, unfair competition feature may be included in accounting for profits and damages, though parties are citizens of same state.**

Where a patent is held valid and infringed, unfair competition feature arising out of infringement may be included in an accounting for profits and damages, though parties are citizens of same state.

**13. Trade-marks and trade-names and unfair competition** ⚎93(3)—**Charge of unfair competition in fraudulently selling infringing apparatus in simulation of physical make-up, etc., of plaintiff's structure held not sustained.**

In patent infringement suit, charge of unfair competition in fraudulently selling infringing apparatus in simulation of physical make-up, arrangement of parts, and general appearance of plaintiff's structure, *held*, not sustained.

**14. Patents** ⚎327(14)—**Statement in decree that manufacturer of infringing articles of patent in suit appeared and exercised control of defense of its agents was not finding of fact, but merely record of fact.**

In patent infringement suit, statement in decree that manufacturer of infringing power-heads of patent in suit appeared (but entered no appearance) in open court, and assumed and exercised control of defense of established agents, was not finding of fact, but merely record of a fact.

**15. Patents** ⚎327(14)—**In patent infringement suit, manufacturer, not party to suit, taking charge of defense, was concluded by decree, though it did not appear of record.**

In patent infringement suit, manufacturer of infringing article, having for its own interest joined in and taken charge of defense of suit, to which it was not party of record, was as much concluded by decree as if it had been party thereto, since its conduct was open and avowed, and was so well known to opposite party as to make estoppel mutual.

**16. Patents** ⚎328—**1,385,141, claims 4 and 6, relating to pump power-heads held not infringed.**

Patent No. 1,385,141, claims 4 and 6, relating to power-heads of pumping apparatus issued July 19, 1921, to P. A. Myers, *held*, not infringed.

**17. Patents** ⚎328—**1,393,306, claims 2 and 3, relating to pump power-heads, held not infringed.**

Patent No. 1,393,306, Claims 2 and 3, relating to power-heads of pumping apparatus issued October 11, 1921, to P. A. Myers, *held*, not infringed.

Appeal from the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Patent infringement suit by the F. E. Myers & Bro. Company against the N. O. Nelson Manufacturing Company. From the decree, defendant appeals. Reversed and remanded, with directions.

Charles A. Brown, of Chicago, Ill. (John L. Jackson, of Chicago, Ill., on the brief), for appellant.

H. A. Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., of Dayton, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of three United States patents relating to the pumping art, numbered, respectively, No. 1,385,141, July 19, 1921, No. 1,385,143, of same date, and No. 1,393,306, October 11, 1921—all issued to P. A. Myers. As declared in the respective patents, the first and third relate to power-heads; the second to pumping apparatus. By due assignments, plaintiff appellee is the owner of all three patents. On final hearing the District Court held each patent valid and infringed.

In the art in question, the power-head is the structure, whether inclosed or open, in or on which is mounted mechanism for reciprocating the plunger rod or piston of a pump for raising water or other liquid from a well. The pump-head is the upper end of the pump cylinder through which the water is so raised to the surface. It also provides the outlet or discharge.

The objects of the invention of the first patent as stated in the specification (but not entirely in the same order) are to provide: (a) An improved power-head and pumping apparatus of simplified construction which will be more economical and effective in construction and operation; (b) a combined power-head and pump-head of such design and construction that the pump-head and its co-operating mechanism may be mounted relative to the power-head and removed therefrom for repairs or adjustments without requiring change in the position of the power-head or its actuating mechanism; (c) an improved gear casing, having a driving mechanism therein, in such a manner that assembling and disassembling of the parts may be quickly and conveniently effected, the parts being reduced in number and simplified as to construction; (d) a power-head having improved means for self-oiling that will be positive and constant in the distribution of oil to the various parts of the mechanism requiring lubrication. By the construction shown in the specification, the self-oiling feature is declared to be not merely a convenience or labor-saving provision in the operation of the apparatus, but a decided feature of economy in operation, by reason of the effecting of large saving in power and a material reduction of wear of the mechanism. There is also shown a type of construction designed to prevent freezing—applicable to conditions of low temperature. Neither the lubricating nor the nonfreezing features

are involved here. The claims of the first patent all relate to pumping apparatus.

The second patent (No. 1,385,143) has for its stated particular object the providing of a combined liquid pumping apparatus and air-pressure pump, whereby the liquid will be pumped and the air pressure in the air tank at the same time charged and maintained, so that the liquid will be discharged from the service pipes under air pressure or combined air and water pressure.

The invention of the third patent relates to a type of oiling mechanism used in conjunction with the power-head of the type shown in the two earlier patents here involved, applications for which were copending. The inventions of the three patents were capable of conjoint use, and are all involved in plaintiff's commercial structure. As respects each of the three patents, defendant denies both validity and infringement.[1]

1. The claims of the first patent in suit (No. 1,385,141) are the fourth, sixth, and seventh, which we print in the margin.[2]

Defendant contends that each of these claims must be construed as calling for a detachable securing of the pump-head against a *vertical* face of the power-head casing; and thus that defendant does not infringe these claims, because in its construction the power-head is not secured to a *vertical face* of the power-head casing, but underlies and is se-

---

[1] Questions of unfair competition and privity of the manufacturer of defendant's structure will be referred to later.

[2] "4. In a pumping apparatus, the combination, with a power-head casing, of a pump-head detachably secured to said casing, in a substantially vertical plane and a pump cylinder suspended from the pump-head below the base line of the power-head, whereby the pump mechanism will be operatively aligned with the power-head."

"6. In a pumping apparatus, the combination, with a power-head comprising a supporting structure and operating mechanism carried thereby to transmit power, of a pump-head detachably secured to said power-head in a substantially vertical plane and adapted to support and suspend conventional vertical pumping mechanism including a vertical piston rod connectible to said operating mechanism, whereby the pumping mechanism is held in alignment with the well and is operated to deliver the water."

"7. In a pumping apparatus, the combination, with a power-head comprising a casing, a power shaft, transmitting gears and a vertical reciprocating member mounted in the casing and operated by such shaft and gearing, of a substantially vertical pump-head detachably secured to said casing and adapted to support vertical conventional pumping mechanism including a vertical piston rod connectible to said vertical reciprocating mechanism."

cured to the base of that casing, against which it bears in a *horizontal plane*, thus making it necessary to the removal of the pump-head either to remove the power-head casing, from it, or to drop the pump-head down and move it from under the base of the power-head.

In the Patent Office, present claims 4, 5, 6, and 7 (and some others) were rejected as not defining a patentable difference over Shorb, No. 1,303,975, May 20, 1919. The Examiner said: "It is believed that by amending the claims to bring out the fact that the pump-head is detachably and directly connected with the power casing *along a vertical plane*,[3] as distinguished from the horizontal connection shown in Shorb, such amended claims would probably be allowed."

Claims 4, 6, and 7 were then amended by inserting the words in black-face type as already printed herein. Later, however, claims 7 and 8 were rejected, as not distinguishable from Shorb, the Examiner saying: "The claims call for a 'substantially vertical pump.' Such a pump is shown in the reference." Claim 7 was then amended by inserting "mounted in the casing and" after the words "vertical reciprocating member," substituting "by such shaft and gearing" for the word "thereby" (which had followed "vertical reciprocating member operated"), and by striking out "all mounted in said casing," which words were no longer necessary in view of the changes already named. By letter accompanying the amendment, applicant's attorneys said: "The honorable Examiner's last action has been carefully considered. There seems to be a misapprehension on the part of the office in saying that these claims call for a substantially vertical pump in the sense that such is the supposed novel feature. This is not the case at all. Claim 7 calls for the power-head casing, and a vertical reciprocating member mounted in the casing. In the Shorb patent there is no vertical member mounted in the casing. This member in applicant's case is illustrated by the device *16*, which is wholly absent from the Shorb patent. And then the claims call for operating this vertical member by the shaft and gearing, which are also stated as mounted within the casing. Then the claim calls for a vertical pump-head detachably secured to the casing. Again in the Shorb patent there is no pump-head secured to the casing. This pump-head is the instrumentality by which the pump member is supported; accordingly the Examiner will see that claim 7 as now explained is clearly allowable." Claim 8 was then reject-

ed on Shorb and was canceled, the attorneys saying: "This claim has been canceled in view of the other claims in the case which appear to duly cover the invention, thus eliminating the necessity of any further issue on claim 8." The patent was then issued.

[1] As to claims 4 and 6, we are constrained to conclude that the patentee's acquiescence in the requirement that the words "in a substantially vertical plane" be inserted, and the making of the amendments accordingly, estop plaintiff from denying that these claims are for a detachable securing of the pump-head against a *vertical face* of the power-head casing. Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162; 20th Century Co. v. Taplin (C. C. A. 6) 181 F. 96; Elliott Mach. Co. v. Appeldoorn (C. C. A. 6) 267 F. 983, 987, and cases there cited; D'Arcy v. Marshall (C. C. A. 6) 259 F. 236; Arnold-Creager Co. v. Brick Co. (C. C. A. 6) 246 F. 441, 444, 445.

It results from these views that claims 4 and 6 are not infringed if defendant's structure has a horizontal as distinguished from plaintiff's vertical plane of connection between pump-head and power-head casing. Comparison of the pump-head section of defendant's device with the pump-head section of plaintiff's device shows that in defendant the upper and horizontal faces of the pump-head contact with, and are secured to, the lower and horizontal faces of the power-head casing, thus creating a horizontal connection. True, there were also vertical faces of the two parts (pump-head and power-head casing) which contact; but we are impressed that the defendant's plane of connection is substantially *horizontal*, and not "substantially *vertical*." In other words, the pump seems to us to lie essentially *below* the power-head casing, rather than at the side of it.

[2, 3] Claim 7, however, stands upon a different basis. The words "in a substantially vertical plane" are omitted, and presumably with purpose. They cannot be read into this claim. Cadillac Co. v. Austin (C. C. A. 6) 225 F. 983, 986. The words "substantially vertical pump-head" do not cover the omission stated. In our opinion, claim 7 is not void for lack of invention. Defendant cites a large number of patents in the prior art claimed to show anticipation. We think no one of them has such effect, and see no occasion to make specific comment upon any but the six mentioned by defendant's expert as in his opinion the best anticipations. To consider those references seriatim:

Of the Myers' patent, No. 1,244,534, issued to the same inventor, it would seem

---

[3] All italics ours.

enough to say that we find nothing therein showing the prominent element of claim 7 we are considering, viz. a pump-head "detachably secured to said [power-head] casing."[4]

[4-7] The specification of the patent in suit declares it "an object of the invention to provide a combined power-head and pump-head of such design and construction that the pump-head and its co-operating mechanism may be mounted relative to the power-head and removed therefrom for repairs or adjustments without requiring change in the position of the power-head or its actuating mechanism." We may look to the specification for construing the language and asserting the meaning of the claim. I. T. S. Co. v. Panther Co. (C. C. A. 1) 260 F. 934, 938, and cases cited. Prior patents are part of the prior art only by what they disclose on their face (Fulton v. Bishop [C. C. A. 6] 284 F. 774, 777, and cases cited); and only when they disclose every element of the combination of the claim in suit. Although every element of a patent combination is old, invention still exists if the combination either produces a new and useful result, or effects an old result in a new and materially better way. Proudfit Co. v. Kalamazoo Co. (C. C. A. 6) 230 F. 120, 127. And a patent otherwise valid is not void for anticipation because a prior patent covers a device which might be so constructed as to be capable of the same use as that of the later patent, where the prior art gives no suggestion that such use was contemplated, and no specific directions for such construction. Topliff v. Topliff, 145 U. S. 156, 161, 12 S. Ct. 825, 36 L. Ed. 658; Canda v. Michigan Co. (C. C. A. 6) 124 F. 486, 492.

The Allen patent, No. 997,891, does not, in our opinion, amount to an anticipation. It shows no enclosed casing for the power-head (plainly meant by the specification of the patent in suit), but merely an open framework consisting of two flat parallel upright webs or plates, bolted below to a base plate which carries the pump-head, and brought together at the top with bolt connections, the two upright plates being "detachable above the pump for convenient access to the working parts." This framework does not furnish the protection to the maximum contemplated by the casing of the patent in suit, and, moreover, is not the casing necessary to cover the power-head described in the specification, as having "improved means for self-oiling that will be positive and constant in the distribution of oil to the various parts of the mechanism requiring lubrication." But the pump-head is not shown to be detachably connected to the base which supports the lower end of the two parallel plates forming the power-head framework; and, while the pump rod is detachably connected to the crosshead which through the pitman reciprocates the pump rod, the pump-head is only very indirectly "detachably secured" to even the framework of the power-head. The Allen patent does not impress us as within the spirit or environment of the patent claim under consideration.

Woodward, No. 627,315, is for a triple-piston deep-well pump. The head does not have the casing of claim 7 of the patent in suit. So far as disclosed by the patent, the pump-head is not detachably secured to the power-head or to a casing thereof. On the contrary, the power-head and pump-head are apparently integrally constructed. The lower or pump-head end is merely what Woodward calls a "head or cover," removable from what is apparently the front face of the pump-head proper, and so giving access thereto. Not only does it not appear that the head will hold oil, or was intended to do so, but the contrary fairly appears.

In Eisenhauer, patent No. 1,328,989, the power-head does not appear to have the casing of the patent claim in suit. Apparently no lubricating system was provided or intended. We think this reference fails to show a pump-head detachably secured to a power-head casing within the meaning of claim 7. The pumping apparatus does not seem to be removable from the well without removing the power-head.[5]

Rayner patent, No. 936,359, does not show a power-head in which the mechanism is inclosed in a casing adapted to self-lubrication of the parts. Rayner calls the structure a "frame" of the "open type." Nor do we regard Rayner's pump-head detachable within the meaning of claim 7 in suit. He provides for removing the plunger rod valves and cylinder from the well by hinging and securing the power-head to its base and securing it to a plunger rod made in two parts, by disconnecting which the lower part of the

[4] The power-head stands directly over the pump-head, and, for anything appearing in the patent, the pump could not be withdrawn from the well, for repairs or otherwise, without interfering with the power-head apparatus.

[5] Defendant's expert says: "If you desired to move the pumping apparatus from the well, you would have to remove the power-head and move it to one side, unless you wanted to move it all in a body. I don't say that with the ordinary well of a few inches or a few feet at most in diameter, you could move to one side this power-head with a sucker rod of several hundred feet in length."

plunger rod drops into the cylinder, permitting the upper portion of the rod to be tilted over or swung to one side.

Chapman, No. 1,152,603, has no power-head "casing" adapted to hold lubricant, but only an open frame. It does not disclose a pump-head detachably secured to the power-head, or even to its frame.

There being no anticipation, the important question is whether the state of the prior art is such as to deny the presence of invention. We think this question must be answered in the negative. While Myers was a prolific inventor, and the pumping art was old and crowded, the commercial success of the inventions of the patent in suit—involved in a single structure—was so immediate and pronounced as strongly to confirm the conclusion of patentable invention otherwise reached.[6]

[8] While it naturally does not appear to what extent each of the three patents in suit contributed to the success of plaintiff's structure, presumably each contributed substantially thereto. In view of the omission from claim 7 of the words "in a substantially vertical plane," infringement seems evident.

2. Of the second patent, No. 1,385,143, claim 1 is alone involved, and is printed in the margin.[7] It will be observed that this claim describes the pump-head as "detachably connected to a *vertical* face of said casing." [9] As already stated in discussing claims 4 and 6 of the first patent, we are impressed that the plane of connection in defendant's structure is substantially *horizontal,* rather than "substantially *vertical.*" Claim 1 of the second patent being thus, in our opinion, not infringed, it is unnecessary to consider its validity.

3. Of the third patent (No. 1,393,306), claims 1, 2, and 3 are in suit. They are printed in the margin.[8]

---

[6] It appears by the undisputed testimony of the patentee that from August 1, 1920, to July 1, 1927, there were sold 25,868 of the self-oiling type well power-heads embodying the patents in issue here; that the sales were had in all the states of the Union except Nevada; that those sales, at consumers' prices, amounted to $2,084,261, and that the total net to plaintiff was approximately $1,313,084; also that, when plaintiff introduced the "self-oiling line in question, as fast as they were introduced, it superseded the old type of pump, and the old type now is practically out of existence in our factory, with the exception, I think, of two units, and they go out entirely when the next catalogue is published, because there is no demand for them and the demand does not justify keeping the stock." He further testified: "The development of a gasoline engine and electric motor brought about a condition that demanded a type of pumps that would operate in continuous performance, which the old construction up to that period did not have. We in the pump business had frequent complaints, after the electric motor came into use, and, in tracing same down, we generally found that it was a case where the pump had not been properly lubricated, and would run hot and that brought to my mind the importance of having a construction that would overcome those difficulties that had developed in our practice, which led to the pump in question here, that is referred to in these patents, and to the idea of designing and constructing a pump that would be amply strong, that would be self-contained, simple, and at the same time lubricate itself, so that it would not need personal attention as much as had been required by the old line pumps. That led up to the construction of the pump that is shown in the patents, and which did accomplish those advantages. In our catalogue we show our pumps adapted for operation up to 800 feet in depth. We have operated some of them in the oil fields in Texas to depths of 1,200 feet, where they have been grouped around a working head placed around each individual well, and operated by electricity. * * * "

[7] It reads: "In a pumping apparatus, the combination, with a power-head, including a casing in which the power mechanism is housed, of a pump-head detachably connected to a vertical face of said casing, a drop pipe suspended from the lower portion of the pump-head to carry the lower cylinder, an upper cylinder mounted on the upper face of the pump-head, a pipe extending from the side of the pump-head other than that adjacent to the casing and opening into the pump-head, a piston rod common to the upper and lower cylinders, and a connection between said piston rod and an operating arm of the power mechanism."

[8] "1. In a power-head, the combination, with a casing adapted to contain a quantity of lubricant, rotatable operating mechanism therein and a vertical guide within the casing, of a slide mounted on said guide, adapted to reciprocate and having means for connection with an apparatus to be operated thereby, and an operating connection between said slide and the rotatable actuating mechanism within the casing."

"2. In a power-head, the combination, with a casing adapted to contain a quantity of lubricant, rotatable operating mechanism therein and a vertical guide within the casing, of a slide mounted on said guide, adapted to reciprocate and having means for connection with an apparatus to be operated thereby, an operating connection between said slide and the rotatable actuating mechanism within the casing, and an oil-pumping tube connected with said slide and adapted to deliver oil from the casing to the upper end of the slide."

"3. In a power-head, the combination, with a casing, rotatable operating mechanism therein, and a vertical guide shaft in the casing and extending above the lubricant line, of a sleeve mounted on said shaft and adapted to reciprocate, an operating connection between said sleeve and the rotatable actuating mechanism, an oiler connected to the sleeve, adapted at one end to gather lubricant and at the other end to deliver the lubricant at the upper end of the sleeve."

*As to claim 1.*—Both invention and infringement are denied. The first-stated object of the invention is the provision of "a casing adapted to contain a quantity of lubricant, rotatable operating mechanism mounted within the casing, as also a substantially vertical guide within it, and a slide mounted on the guide on which it reciprocates, and having means for connecting it with the apparatus to be operated by the power-head, and a connection between such slide and the actuating mechanism, all of these devices being within the casing and adapted to be lubricated by the contained lubricant, save the connection between the slide and the outside apparatus, which is without the casing."

[10] The defense of anticipation we think not well taken. Defendant's expert cites four patents as being the closest in this respect, viz.: Brett, No. 758,296; Myers, No. 1,244,534; Stenger, No. 1,134,929; and Hall, No. 798,506. We think no one of these references is an anticipation. It seems enough to say that no one of them shows the element of claim 1 in its environment, viz. "a vertical guide within the casing, of a slide mounted on said guide adapted to reciprocate," etc., nor the equivalent thereof. We think that feature one of the prominent, distinguishing, and valuable elements of the three patents in suit. Myers says of the guide feature, and we think justly: "Probably its most dependable feature is the guide which is supported at both ends, and the slide operates on that, which is caused to travel absolutely perpendicular, straight in line, so that we get a straight line on our sucker rod," etc. It should be unnecessary to say that the fact that a guide of this kind, with a slide on it, was not new before the patent on suit does not forbid invention in this combination claim. We find no lack of invention in claim 1, and infringement is clear; indeed, it is scarcely denied.

*Claim 2* differs from claim 1 only in the addition of the element of "an oil-pumping tube." The last element of claim 3 consists of an "oiler" and its connections and adaptations; plaintiff's oiling device, being the "oil-pumping tube" and the "oiler" of claims 2 and 3, respectively, consists of a tube (connected with the reciprocating sleeve) *whose upper end* discharges oil into a cup formed in the *top* of the sleeve, its lower end carrying an encased valve which enters the oil pump; the reciprocating of the sleeve raising the oil in the tube and causing it to empty into the sleeve and work its way down between the sleeve and guide shaft, to meet whatever

25 F. (2d)—42½

oil has entered at the lower end of the sleeve, through the latter's reciprocation.[9]

We find it unnecessary to consider the validity of claims 2 and 3, because we think defendant's structure has not the "oil-pumping tube" or the "oiler" of those claims. It contains no tube which discharges oil into the top or any other part of the casing, nor any added provision for positively supplying lubricant. The entire oil supply in defendant's structure enters from below the space between the guide and sleeve, just as does a portion of the oil supply in plaintiff's device. Its only feature added to such suction from below consists of the formation of a slight break in the bushings of the slide, apparently a little above the center of the guide, thus making a slightly enlarged space next to the guide, which temporarily contains a small part of the oil forced up *from below*. Defendant's device would seem less effective than plaintiff's, but, however that may be, the result is effected in a materially different way.

[11-13] 4. *Unfair Competition.*—The bill charges unfair competition in fraudulently selling the infringing apparatus in simulation of the physical make-up, arrangement of parts, and general appearance of plaintiff's structure. The motion to dismiss that feature for lack of jurisdiction, because suit was not brought in the district of the residence of either of the parties (section 51, Judicial Code [28 USCA § 112]) was properly denied. Where a patent is held valid and infringed, the unfair competition feature arising out of that infringement may be included in an accounting for profits and damages, though the parties are citizens of the same state. K-W Ignition Co. v. Temco Co. (C. C. A. 6) 243 F. 588, 591; Detroit Co. v. Kawneer Co. (C. C. A. 6) 250 F. 234, 239. The decree contained reference to master to determine plaintiff's damages for this competition. There is no evidence as to unfair competition unless as disclosed by comparison of the external appearance of the competing structures. We are not impressed that the charge of unfair competition is sustained.

[14, 15] 5. *Privity of Manufacturer.*—The decree states "that the American Well Works, of Aurora, Ill., manufacturer of the infring-

---

[9] The patent specification suggests as a object of the improvement that "as the reciprocating sleeve or member travels back and forth it causes a connected oiler in the form of a tube and valve to receive the lubricant generally contained in the power-head casing, and deliver it at or near the other extremity of the sliding member so as to reciprocate its bearing surface."

ing power-heads of the patent in this suit, appeared (but entered no appearance) in open court, and assumed and exercised the control of the defense of its established agents the N. O. Nelson Mfg. Co." We see no impropriety in this. The paragraph in question is not a *finding* of fact, but merely a *record* of a fact. It plainly does not mean that the manufacturer entered a formal appearance of record and became a party defendant to the suit, but manifestly means only that the well works appeared by attorney, but not of record. It was not necessary to the making of the well works privy to the decree that it appear of record. The manufacturer, having for its own interest joined in or taken charge of the defense of the suit to which it was not a party of record, is as much concluded by the decree as if it had been a party thereto, since its conduct in that respect was open and avowed, and was so well known to the opposite party as to make the estoppel mutual. Penfield v. Potts (C. C. A. 6) 126 F. 475, 480; Lane v. Welds (C. C. A. 6) 99 F. 286. As to the method of enforcing liability against a privy in case of final decree and interlocutory decree, respectively, see Merriam v. Saalfield, 241 U. S. 22, 27, et seq., 36 S. Ct. 477, 60 L. Ed. 868.

[16, 17] The decree of the District Court is reversed, and the record remanded to that court, with directions to enter a new decree, adjudging claim 7 of patent No. 1,385,141 valid and infringed, adjudging claims 4 and 6 of that patent not infringed, adjudging claim 1 of patent No. 1,385,143 not infringed, adjudging claim 1 of patent No. 1,393,306 valid and infringed, and claims 2 and 3 of that patent not infringed; dismissing the bill of complaint so far as concerns the charge of unfair competition and containing reference to the manufacturer of defendant's infringing device; awarding to plaintiff the costs of the District Court. The costs of this court will be equally divided.