BATTEY et al. v. PARIS BEAUTY PARLORS SUPPLY CO. OF SAN FRANCISCO, Limited.

No. 2974.

District Court, N. D. California, S. D.

Aug. 30, 1933.

Paul D. Flehr and Arlington C. White, both of San Francisco, Cal., for plaintiffs.

Charles C. Montgomery, of Los Angeles, Cal., for defendant.

SAMES, District Judge.

The patentee, Sumter B. Battey, and his assignee, Duart Manufacturing Company, Limited, instituted this suit against the defendant for infringement of patent No. 1,681,-511 for a hair waving or curling device applied for November 4, 1926, issued August 21, 1928. The claims of the patent alleged to be infringed by defendant's apparatus are as follows:

"1. A hair waving or curling device comprising a frame, a rotatable form supported thereby, said frame being adapted to wind up and tension a strand of hair, means for locking the form against rotation relative to the frame, and supporting means carried by the frame and engaging a strand of hair, said supporting means being adapted to sustain the tensile stress applied to the hair by said rotatable form whereby the hair may be tensioned without imparting pull to the scalp."

"3. A hair waving or curling device comprising a rotatable form upon which a flattened strand of hair may be wound, a frame externally embracing and rotatively supporting said form at points on either side of the portion of the form on which the hair may be wound, and clamping means mounted on said frame and adapted to grip a strand of hair whereby the said strand when so gripped may be tensioned around the form by rotating the latter relatively to the frame."

A simple form of the Battey device having only a single rotatable form is shown in Figure 11 of the patent. Other figures show means for operating a plurality and variety of forming instruments or curlers by which, it is claimed, a number of waves or other desired configurations of the hair may be produced. Figure 1 shows an arrangement in a frame for simultaneous operation of several forming instruments by manipulation of a single actuating element such as a gear train.

The structure shown in Figure 11 comprises a C frame which may be made of sheet metal or other rigid material such as hard rubber or bakelite. One arm of the supporting frame is bent to form a spring clip for the insertion and removal of the rotatable form or curler. The opposite arm of the frame carries at its end a tapered or conical bearing in which the tapered end of the rotatable form is inserted to provide a taper lock. (Patent, p. 5, lines 90–100–103.) The device is provided with a simple bar clamp pivoted at one end to the upper part of the frame by means of a loose rivet, the other end of the bar clamp swinging under a catch fastened to the rear vertical frame part. When a strand of hair is placed

between the top frame member and the bar, the bar may be snapped into the catch and by this means apply to the hair a yielding grip which will be sufficient to permit the tensioning of the hair between the upper part of the frame and the rotatable form. (Patent, p. 6, lines 5–10–15.)

The elements or features comprised in claims 1 and 3 of the Battey device are shown in said Figure 11.

Fig. 11.

Fig. 12.

Claim 1. 1. A frame. 70–71–72–73.

2. A rotatable form supported by said frame to wind up, and tension a strand of hair. A.

3. Means for locking the form against rotation relative to the frame. 74–75.

4. Supporting means carried by the frame and engaging a strand of hair, said supporting means being adapted to sustain tensile stress applied to the hair by said rotatable form whereby the hair may be tensioned without imparting pull to the scalp. 81–82–83.

Claim 3. 1. A rotatable form upon which a flattened strand of hair may be wound. A.

2. A frame externally embracing and rotatively supporting said form at points on either side of the portion of the form on which the hair may be wound. 70–71–72–73.

3. Clamping means mounted on said frame and adapted to grip a strand of hair whereby said strand when so gripped may be tensioned around the form by rotating the latter relatively to the frame. 81–82–83.

Plaintiffs' commercial device is designated the "Duart." (Plaintiffs' Exhibit 13.) It is shown on drawings or charts made by plain-

tiffs' expert, admitted in evidence as Plaintiffs' Exhibits 15 and 17. The elements or features of claim 1 of the patent appearing in said Figure 11, and above specified as 1, 2, 3, and 4, are shown and identified in said Exhibit 15, as incorporated in the "Duart" apparatus as B, A, D, and C, respectively. The elements or features of claim 3 of the patent, appearing in said Figure 11 and above specified as 1, 2, and 3 thereof, are shown and identified in said Exhibit 17, as incorporated in the "Duart" apparatus as A, B, and C respectively.

Defendant's hair waving apparatus, claimed by plaintiffs as infringing the Battey patent, is designated the "Artistic." (Plaintiffs' Exhibit 12; Defendant's Exhibit II.) It is shown on drawings or charts made by plaintiffs' expert, admitted in evidence as Plaintiffs' Exhibits 14 and 16. The elements or features of claim 1 of the patent in said Figure 11 above specified as 1, 2, 3, and 4 thereof are shown and identified in said Exhibit 14 as incorporated in the "Artistic" apparatus, as B, A, D, and C, respectively. The elements or features of claim 3 of the patent appearing in said Figure 11 above specified as 1, 2, and 3 thereof are shown and identified in said Exhibit 16 as incorporated in the "Artistic" device as A, B, and C, respectively.

Each of claims 1 and 3 of the Battey patent comprises a rotatable form or curler for winding a strand of hair, and a frame for supporting said form. Claim 1 includes means for locking the form against rotation relative to the frame, and supporting means on the frame engaging a strand of hair, adapted to sustain tensile stress applied to the hair by the form without imparting pull to the scalp. Claim 3 includes clamping means on the frame adapted to grip a strand of hair for tensioning the latter relative to the frame. The last element of claim 1 provides means for tensioning by the curler of a strand of hair wound thereon without pull to the scalp. The last element of claim 3 provides means for tensioning by the curler of the strand thereon against the frame.

Defendant construes the frame of the Battey patent as one supporting and spacing a plurality of forms, whereby the hair may be more effectively acted upon by the forms, and points out as the essence of the invention, as shown in Figure 1, that the wave is imparted to the hair over forms of the correct shape to directly impart the desired curvature to the hair; that the spacing of the forms determines with mathematical certainty the length and shape of the wave produced; that the de-

vice permits of the uniform stressing of the hair disposed between the rotatable forms. Figure 1 shows an arcuate frame as a preferred embodiment of the device on which a plurality of curlers may be spaced and operated. The elements of claims 1 and 3 embodied in Figure 11 are disclosed in a single form or curler for tensioning of the hair against the C frame. The patent is not confined to the particular figure shown in the drawings as the preferred one. French v. Buckeye Iron & Brass Works (C. C. A.) 10 F.(2d) 257.

Defendant contends that the means, modes of operation, functions, and results of defendant's apparatus are wholly different from those covered by the patent; that the frame, rotatable form, locking means, and hair supporting means as specified in the patent constitute a co-operative entity not embodied in defendant's protector and curler; that there is no frame or form in defendant's apparatus in the sense of the Battey patent; that the "Artistic" device has no means to lock a form against rotation whereby tension may be applied by rotating a rotatable form which is in turn locked; and that defendant has no clamping means mounted on a frame as specified in claim 3 of the patent.

A comparison of the "Duart" and "Artistic" apparatus discloses some difference of structure. Plaintiffs employ a ratchet lock against rotation of the curler when in position in the uprights of the frame. The curler of the "Artistic" apparatus is locked by an internal spiral clutch inserted in the end of the curler.

Defendant designates the frame or support of the uprights which engage the curler, to which the jaw for clamping the hair at the scalp is attached, the "protector." The latter is spaced longitudinally to provide a chamber for the escape of steam in the application of heat to the hair. Defendant contends that the "Artistic" apparatus comprises separate means for separate processes in tensioning and effecting the desired waves or configurations of the hair; that the hair is wound and tensioned manually on the curler apart from the protector; that rotation of the curler after its insertion in the slots of the uprights is for the purpose of taking up the slack in the strand occasioned by such insertion, whereas plaintiffs' device is an entity of means and operation by which the tensioning of the hair is effected wholly by the rotation of the form against another form or forms, or equivalents, while engaged in the arms or uprights of the frame.

Literally, at least, claims 1 and 3 of the patent read directly on the "Artistic" apparatus, and it is apparent from the operations and use of the two commercial devices, as shown by the testimony, by the photographs in evidence, and by the demonstrations made at the trial, that the implements employed, the operations of, and the results obtained by, the "Duart" and the "Artistic," are substantially the same. In the operation of each, a flattened strand of hair is engaged at the scalp by a clamp or jaw locked by a cam latch to the frame or protector. The opposite end of the strand is engaged on the roller by a tongue hinged thereon, and rolled spirally on the curler apart from the frame or protector. The strand, held taut between the roller and clamp, is rolled down manually to the slots of the uprights or side pieces of the frame or protector, and adjusted therein and locked by the ratchet or spiral clutch against unwinding or slack as the end slugs engage the slots. Further tension is then applied to the strand by rotation of the roller or curler in the open turn of the latter. In the process of tensioning the strand of hair tensile stress on the scalp is avoided by the clamp or jaw holding the strand tightly to the protector or frame. From the testimony in the case, it appears that the operation of spiral winding and tension as described, with the application of solutions and heat, flattens or changes the shape of the filaments of the hair from round to oval, which is essential in the production of the permanent Croquignole wave.

Appropriation and infringement of plaintiffs' means preventing pull to the scalp and for tensioning the hair by rotating the curler relative to the frame is not avoided because the clamp on the protector of the "Artistic," in addition to preventing pull on the scalp, serves to protect the scalp and hair against heat. Corrington v. Westinghouse Air Brake Co. (C. C.) 173 F. 69; Smith Cannery Machines Co. v. Seattle-Astoria Iron Works (C. C. A.) 261 F. 85; Palmer v. E. Z. Waist Co. (D. C.) 278 F. 530; Krauth v. Autographic Register Co. (D. C.) 285 F. 199; Johns-Manville Corp. v. Nat. Tank Seal Co. (C. C. A.) 49 F.(2d) 142.

Means employed for locking the curler against rotation relative to the frame or protector—in the "Duart" device by the ratchet and pawl; in the "Artistic" apparatus, the internal spiral clutch—serve the same purpose, and appear merely as mechanical equivalents. A combination is identical in substance with what is already patented, if it consists of the same elements, or mechanical

equivalents, combined in substantially the same way to produce substantially the same results. 48 Corpus Juris, p. 31, § 30; Seamless Rubber Co. v. Stall, etc., Mfg. Co. (C. C. A.) 23 F.(2d) 820; Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945. The ratchet and pawl are ordinary mechanical expedients commonly used in all the arts to prevent unwinding. Naivette, Inc., v. Bishinger et al. (C. C. A.) 61 F.(2d) 433, 436.

The spiral clutch evidently is of the same character and serves a similar purpose. The "Duart" device discloses changes in form and proportions from the structure shown in Figure 11, and some refinements of construction in the former.

The record, however, sufficiently discloses that plaintiffs' commercial device embodies all of the elements of claims 1 and 3 of the Battey patent. It is also shown that the apparatus of the defendant incorporates all of the elements of said claims, and that the two commercial devices are substantially identical in means, mode of operation, functions, and results.

■ In addition to denial of infringement because of essential differences in defendant's apparatus with that of the Battey patent, it is contended that the patent is invalid because of anticipation and because of lack of invention. Defendant introduced many earlier patents, foreign and domestic, to show that curlers having frames supporting the same with means to prevent unwinding were old in the art. It is further contended that Battey's means for clamping the hair at the scalp was not invention, but was merely the exercise of mechanical skill. Defendant introduced in evidence Mayer reissue No. 17,393, March 19, 1927, and Decker No. 1,683,531, September 4, 1928, the latter subsequent to Battey in application and issuance. Both of these patents show means for clamping a strand of hair at the scalp.

Since the case was submitted, and on October 12, 1932, the Circuit Court of Appeals of the Sixth Circuit rendered its decision in the case of Naivette, Inc., v. Bishinger et al. (Herold Bros. Co. v. Philad Co. et al.), 61 F.(2d) 433. The four patents in those suits, held valid and infringed by the District Court, relate to the permanent hair waving art. The cases arose out of the same act of infringement, and were tried as one. Two of the patents involved are Mayer, reissue No. 17,393, and Decker, 1,683,531. The court discusses the Mayer reissue patent at length, and first considers and disposes of the process claims of the Mayer patent. The opinion affords an outline of the Croquignole method of hair waving as described and developed by Mayer, and of his difficulty in effecting a tight uniform spiral wind in curling from the tips, with both hands engaged with the curler, without pulling the hair at the scalp. This difficulty Mayer overcame by providing a protector clamp which gripped the hair in a flat thin band so tightly that discomfort was avoided, and a uniform tension of the filaments of the hair effected, as a step in the method of production of the Croquignole wave. The court finds invention in Mayer's method of hair treatment, and sustains the process claims of his patent.

Considering next the claims of Mayer for a hair engaging clamp in the first reissue, and the heater levers of the second reissue, the court finds no invention.

Quoting the opinion in the Naivette Case: "Given a process that is patentable, we are confronted with the relationship of process to machine. It is settled that there is a fundamental difference between process and machine, and the process may be patentable irrespective of any particular form of machinery or mechanical device for practicing it. The converse is also true. * * * Having discovered a new process for giving the Croquignole wave, it became necessary for Mayer to reduce it to practice, either by known appliances, or by those newly devised. Until he accomplished this his conception was not a patentable invention, because useless. * * * If the means for putting his process into practice were obvious, or already disclosed by the art, no invention was involved in making use of them, no matter how clearly the process might disclose invention. * * * Mayer, conceiving that holding a flat strand of hair under tension was a necessary step in his new process, the use of a clamp for that purpose must have been obvious. Moreover, clamps were found in the art performing substantially the same function. * * * There is no contradiction in sustaining validity of a process, which includes clamping as a step in a new combination, and yet to deny validity to the patent for a clamp as a unitary device. Nor is the consideration we have given to commercial acceptance of the Mayer process persuasive of invention in the appliance, since novelty is the essence of invention, and the appliance is not new."

Holding the claims of the clamping means of the Decker patent invalid for lack of invention, and noting that the most contended for is that Decker improved upon the protector and insulating clamp of Mayer by

combining them so that both could be applied in a single operation, including an air space increasing the thermal insulating qualities of the combination, and providing a cam latch for the protector, the court says: "We fail to see invention in Decker. He combined old elements, but manifestly in such a way as must have been obvious to anyone skilled in the art, and the combination produced no new result. If what he did marked any improvement in the art, it solved no real problem and answered no recognized need, and such advance, if any, as was achieved was altogether too trivial to rise to the dignity of invention."

The similarity of the clamping means for tensioning the hair without pull to the scalp of the Mayer, Decker, and Battey devices is apparent. The decision of the Circuit Court of Appeals in the Naivette Case, it seems to me, sustains the contention of the defendant that Battey's attachment was obvious, and was not invention, and that the decision should be followed in the instant case.

The combination of the remaining elements of claims 1 and 3 of the Battey patent appear old in the art and anticipated. Devices comprising a rotatable form or curler for winding a strand of hair, a frame for supporting said form, and means for tensioning and for preventing unwinding, are shown in Grocott, 854,884; Mayer, Re. 17,393; Gaire, 1,610,855; and Decker, 1,683,531.

The Court of Appeals in the Naivette Case also holds Bishinger's patent, No. 1,718,025, invalid because lacking in invention. Bishinger apparently devised a curler rod with ratchet teeth in the ends, and spring pawls upon the protector clamp to engage the teeth, which not only facilitated the winding operation, but gave a more positive lock to the curling rod, and permitted him to increase the tension on the hair by turning the rod after it had been positioned upon the protector clamp.

■ Evidence was received, subject to objection and final ruling, offered to prove that defendant's device has been developed independently of the patent, in the natural course as mechanics develop things in which they are working; that defendant's witness Wehner took the Mayer device and others that came over from Germany and developed modifications of the same up to the present form used by Wehner; and that defendant's witness Baum, from whom the defendant obtains some of the parts for the "Artistic" apparatus, improved on Wehner in producing the latter. Such evidence is incompetent. If a device so developed is substantially identical with one under a valid patent, a defense of independent development, like that of a lack of knowledge, would strip the patent of all protection.

■ Over the objection of defendant, plaintiffs called Ernest Baum, not a party to the suit, who testified that he was paying the fees of defendant's counsel and the court costs of the suit. The testimony was properly received.

"A person is bound by the decision in a patent infringement suit, where, although not a party, he openly, avowedly and with the knowledge of plaintiff, assumed, controlled and conducted, or participated in, the defense at his own cost or for his own interest. Beyer Co. v. Fleischmann Co. (C. C. A.) 15 F.(2d) 465; Nelson Mfg. Co. v. F. E. Myers, etc. Co. (C. C. A.) 25 F.(2d) 659; 48 Corpus Juris, p. 406, § 544, note 38 (a).

■ In view of the foregoing, it appears that the defendant has sustained the required burden of proof that claims 1 and 3 of the Battey patent are invalid because of anticipation in the prior art, and because of lack of invention, and that defendant is entitled to judgment as prayed.

Findings and decree accordingly may be prepared, served and submitted.